In the matter of James De Vaucene.

## SUPREME COURT.

### *In the matter of* JAMES DE VAUCENE.
### *In the matter of* JOHN H. KETCHUM.

*Excise Law.* The "act to regulate the sale of intoxicating liquors within the metropolitan police district, of the state of New York," passed April 14, 1866, is *not unconstitutional,* as being in violation of section 16 article 3, of the constitution of this state, which provides that no private or local bill which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title.

If it be conceded that the act is a *local* one, it is nevertheless valid, for it does not embrace more than *one subject*—the regulation of the use of ardent and spirituous liquors, wines, ale or beer, mentioned therein.

It is settled law, that it is competent for the legislature to regulate the sale and disposition of liquors. Such is the effect of the provisions of this act. Therefore the third section of the act is not unconstitutional, as tending to divest the owner of his property without due compensation.

It is well settled, that a law *invalid in some of its provisions,* may nevertheless, be valid, and enforced as to the residue.

Where the question raised under this act is, whether the sale by a person of ardent and spirituous liquors mentioned therein, without a license granted by the board of excise, subjects him to arrest and imprisonment, upon the complaint made against him? the court must decide that such sale is in express terms prohibited by the act, and is declared to be an offence punishable by fine or imprisonment or both. The act constitutes this a distinct and separate offence, having no connection with any other.

*Kings General Term, July,* 1866.

*Before* LOTT, SCRUGHAM *and* GILBERT, *Justices.*

WRITS OF HABEAS CORPUS, in each of these cases. In the first case, *In the matter of De Vaucene,* the writ was issued by Judge LOTT; and in the other case, *matter of Ketchum,* the writ was issued by Judge GILBERT, to discharge the defendants from arrest for selling spirituous liquors without licenses, in violation of the excise law of April 14, 1866. As these cases may be considered the pioneer cases, which involve the constitutional construction of this act, the points and arguments of counsel are given very fully.

HENRY W. MOORE, *for defendants.*

These matters came up on two distinct writs of habeas corpus, one of which was issued by Judge LOTT, and the

other by Justice GILBERT, the former in the case of *De Vaucene*, and the latter in the case of *Ketchum*. The law and the proceedings which have been taken under it, the arrests, and the suits which had grown out of it, were matters that caused a great deal of public comment, and to some extent of public excitement. It had been deemed advisable by some persons engaged in the liquor traffic in this city, that there should be a decision upon the questions involved in this law by some justice, or by some court, whose decisions would have the weight of authority, something by which those who were engaged in the business itself, as well as those public officers whose duty it was to enforce the law, might be governed and guided. And it was with a view of getting that decision that his clients had retained him to argue this matter in their behalf. Their honors well knew from the accounts that had been published within the last few days that the law had been discussed at length and with great ability before several judges in New York city, by very distinguished counsel, especially in one case, which seemed to him to cover every point in which the argument against the law had been made, by Mr. Brady. So much had been said by these gentlemen, their arguments had been so full and exhaustive upon the matter, that much that was new could not now be advanced. He would, however, take the liberty of stating a few ideas that had suggested themselves to him on the subject, but he would say beforehand, that the points he intended were those which were made by Mr. Brady in the case before Recorder HACKETT. He (Mr. Brady) had argued the case upon demurrers to indictments, embracing every offence under that law. The points of Mr. Brady were so elaborate and complete that he would submit them as soon as he concluded, on behalf of the relators in this case.

The first objection to the law, and it had been confirmed by Recorder HACKETT, was that the act is invalid for want of a proper title not being in accordance with section 16 of article 3d of the constitution, which provides that no local bill shall embrace more than one subject, and that it shall

be expressed in the title. This bill embraced a variety of subjects—it not only pretended to regulate the sale of intoxicating drinks, but it established offences and punished them by fines, and regulated the appropriation of the revenue obtained under the act. Their honors would thus see that the mere regulation of the traffic, was not the only subject provided for in the bill. And he contended it was a local bill within the meaning of the constitution. The title of the act was " an act to regulate the sale of intoxicating liquors within the metropolitan police district of the state of New York." This was incorrect, because the whole of the metropolitan police district was not included in the bill, the county of Westchester being excluded.

One principal objection was taken on the ground that liquors are property in whose soever hands they might be; that they are so recognized by the law of the state and by the decisions of the courts, and especially by the decisions in the main law cases, where an express resolution was passed by the court of appeals to that effect. He took it there could be no doubt upon the decision in that case, and all the decisions that had ever been made on the subject, that these liquors were property in every sense of the term. And if it were conceded, for the sake of argument, that the legislature might regulate the traffic in them, still he contended it had no right, under pretence of regulating, to prohibit it, or to destroy or in any way impair the rights of persons owning that property in the property itself; and he would endeavor to show that this act impaired and destroyed the rights of property in liquors held by persons prior to the passage of the act. In the first place it prohibited their sale (§ 3) in quantities less than five gallons. It was to him difficult to see what power the legislature had to prohibit the sale in quantities less than five gallons, or what more power they had to prohibit their sale in these quantities than to prohibit it entirely. Quantities less than five gallons were just as much property as quantities over five gallons. It seemed to him that the same rule must be applied to this kind of property as to every other, and that it would be

In the matter of James De Vaucene.

utterly unconstitutional and irregular in every respect to provide that no man should sell flour in less quantity than ten pounds at a time, or real estate in less amounts than an acre at a time. When they attempted to regulate in this manner, they destroyed that right of disposition of property without which it is nearly worthless. These restrictions upon trade had always been looked on unfavorably by the courts, and there was nothing which should create an exception in favor of this law.

The law says not only that a man shall not sell, but that he shall not publicly keep liquors in less than five gallons. It makes the mere exhibition of a man's property a misdemeanor. When a man owned property he supposed that he had a right to keep it publicly so long as he did not do so for any unlawful purpose. But the act specified that he should not keep it publicly at all unless he had this license. There was another phrase, that he should not give away or dispose of any strong or spirituous liquors, wines, ale or beer, so that a man who, at the time this law went into effect, might have had a stock of liquors, unless he could find some one to buy it in quantities less than five gallons, was compelled by this law to destroy them, since he could not keep them, nor give them away nor dispose of them, the only thing left was to destroy them. He believed there was no authority for the legitlature, under the constitution, to compel a man to destroy property and absolutely put it out of existence, as this law provides, unless he gets a license. He had said enough to their honors to indicate what views he intended to urge. Under pretence of regulating, the legislature had gone further and absolutely destroyed property. According to the provisions of this section, which is the main one of the act, and without which the act would be of no effect, a man was compelled to destroy property which he might have had in his possession before the law went into operation.

He contended also that the law was invalid for this reason if for no other, that it created what might be called geographical crimes, distinctions in the matter of offences

between different portions of the state, and he intended to urge it upon their honors, that in passing criminal laws it was not in the power of the legislature to make a discrimination between the cities of various and different sections of the state.

As Recorder HACKETT put it, he desired to know whether the legislature could make it grand larceny in New York to steal twenty-six dollars, and only petty larceny in Buffalo to do the same act.

He said further, that this law imposed a tax upon persons engaged in a certain business for the purpose of adding to the revenues of a particular portion of the state, and moreover, that a portion of the money so raised was not to be applied in the district whence it was obtained, the metropolitan police district, but was to go to the asylum at Binghamton. Taxes for the support of public institutions must be raised upon the whole state.

The act was void, too, because it conferred upon the excise commissioners judicial powers. It conferred upon them the power of confiscating licenses which have to be bought at such prices as they themselves may choose to impose. A power was given to cancel licenses and take away all the benefits which might be derived under them. In other words a provision was made by which this excise board was constituted a stated tribunal before whom complaints were to be made and trials held for revoking licenses. He said there was no power in the legislature to erect such a tribunal. It was in reality taking away property without due process of law, in a manner unknown to the constitution, and repugnant to the spirit of our laws.

He also contended that section 19 of the act was void, because it conferred upon policemen, sheriffs, and constables the right, not only to arrest for any violation of this law, but to dermine whether the law had been violated, and in case they concluded it had, to confiscate property to a certain extent by summarily closing the place of business of the person who violated the law, for an indefinite period—any length of time they chose—making the policeman the judge

of the necessity of closing the place before any investigation has been held. It seemed to him that no such provision as that could ever stand—that these officers should have the power of going into a man's house and actually destroying his business upon their own mere motion—upon view—without any judicial proceeding having been taken. It puts the property, or the means of disposing of it, at the mercy of every sheriff, constable and policeman in the police district. He did not know how his learned friend would undertake to sustain that provision of the law, but it seemed to him one which could not be sustained.

There was another section directing that persons having licenses should prevent, as far as in their power, all disturbances and breaches of the peace, and in case any occurred, should give notice at the nearest station house and have their place cleared of all who might be within it, closed, and kept closed till peace was restored. A man might conduct his business in an orderly and proper manner, but a gang of rowdies might raise a disturbance, and because of their act a policeman has the right to close the place and keep it closed.

He would not occupy their time further, except to say that when their honors came to look at the law and examine it, they would discover that under pretence of regulating the traffic in liquors, this was an attempt actually to prohibit and destroy it, and that it does actually work a confiscation and destruction of all property of that kind on hand at the time of the passage of the act. He closed by submitting the points of Mr. Brady.

Judge LOTT asked him if he considered the provisions he referred to made other provisions of the act, such as the one restricting the sale of liquors without an excise license, unconstitutional ? Might it not be constitutional in some of its provisions while unconstitutional in others ?

Mr. Moore replied that he considered the provisions referred to, as the life and soul of the act, and if they were destroyed the act would be destroyed also.

JAMES T. BRADY, *on same side.* (*His points used in the cases before Judges* CARDOZO *and* HACKETT.)

*First.* This act is invalid, for want of a proper title, as required by section 16, article 3, of the constitution of this state, which provides that "no private or local bill which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." This act embraces several subjects. It not only professes to regulate the sale of intoxicationg liquors, but also creates new criminal offenses, and provides for their punishment. For example, section 21 makes intoxication a criminal offense. There are many sections regulating the exercise of criminal jurisdiction, such as the 18th, the 20th and 24th sections. And the title of the act is entirely incorrect, because it is not a law, in any sense, relating to the metropolitan police district, but, as already stated, to certain ·counties which that district embraces.

*Second.* The constitution of this state (*article* 1, § 1) provides that "no member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." This plainly includes the rights of property, which necessarily includes the power of disposition. As the late George Wood, Esq., remarked, in an able opinion on the prohibitory liquor law of this state, passed in 1855, " this kind of property (liquor) is manufactured and imported, bought and sold to be used as a beverage, and when not allowed to be used in that way, it is rendered in a great measure worthless as an article of merchandise and traffic. Under these circumstances, it is questionable whether a dealer in the article could afford to pay storage for keeping it. The power of disposal is an essential ingredient of the idea of property. Property imports dominion, use, control. In a civil country, indeed in any country advanced beyond the hunter state, the power of disposal is all important. No man would acquire this property in the way of business, as

an article of exchange for the ordinary uses to which it is applied, unless he could sell it."

In the language of the late Mr. Justice CATRON, of the supreme court of the United States, "ardent spirits have been for ages and now are subjects of sale and lawful commerce, recognized as such by our treaties with foreign powers, and by the dealings in them among the states of the union." They are recognized in our national legislation as sources of revenue in the way of duties, on such as are imported, and all of them are included in the basis on which the income and other national taxes are assessed (*Wynehamer* agt. *The People*, 13 *N. Y. Rep. pp.* 378 *and* 487).

*Third.* The law of 1866 is unconstitutional, because it makes no distinction whatever between imported liquors and those of domestic manufacture. Section 3 provides in unqualified terms that " from and after the first day of May, 1866, no person or persons shall, within the said metropolitan police district, exclusive of the county of Westchester, publicly keep on sale, give away or dispose of any strong or spirituous liquors, wines, ale or beer, in quantities less than five gallons at a time, unless he or they may be licensed pursuant to the provisions of this act, and may be permitted by it."

The states have no power to prevent or impede the importation of property from foreign countries, for the treaty making power is vested in the President and senate of the United States, and congress is expressly authorized to regulate commerce with foreign nations (*Constitution U. S. art.* 1, § 8, *sub.* 3). This power is exclusive of all state control. Congress has, in the passage of many laws, provided for the introduction of liquors and other property on the payment of certain duties to the United States. The right to import is, therefore, conferred by law paramount to all state authority, and it gives the importer the right to sell (*Brown* agt. *The State of Maryland*, 12 *Wheaton, p.* 419).

The act in question also extends to liquors brought from other states in the union. Congress has power to regulate commerce among the several states (*Constitution U. S. art.*

1, § 8, *sub.* 3). No state law can prohibit the introduction of liquors from another state, unless it obtain the power, from the mere fact that congress has not legislated over this subject, which we contend does not create any such right. As section 3 of the act makes no distinction whatever, but is general and arbitrary in its terms, it must be entirely approved or made entirely nugatory. No interpretation can help it, and we insist for reasons just stated that the third section is void. If it be void, the rest of the law has no foundation or basis upon which its detailed provisions can take effect. (*The People* agt. *Brooks*, 4 *Denio, p.* 469 ; *The People* agt. *Huntington*, 4 *N. Y. Leg. Obs. p.* 187.)

*Fourth.* This act is unconstitutional, because as to all persons not licensed, the property, which they held at the date of its passage, or thereafter acquired, is destroyed without judicial process, and merely by legislative will. In effect, therefore, if the promotion of morality be a public use, it is taken for that public use without compensation, in direct conflict with article 1, section 6 of the constitution of this state, which provides, amongst other things, that no person shall be " deprived of life, liberty or property, without due process of law, nor shall private property be taken for public use without just compensation" (*See R. S. Edmond's edition, p.* 38, *and the cases there cited*).

*Fifth.* There is no constitutional warrant for the prohibition against giving away one's property, whether it be liquor or land, or a chattel of any kind. It might be that a person who was refused a license but who owned a large stock of liquors would desire to make them a present to one who had received a license ; this act would prevent his doing so, and yet the liquors would be his property in every sense of the word, with the power of disposition as a natural right left in him, its exercise only prevented by an act of legislation. The result would be, that he must either keep the liquors, or consume them (which he might have no taste to do), or destroy them, being compelled to the latter result, in this event, by legislation.

It may be true that the state can regulate the sale or dis-

position, for gain or in barter, of intoxicating drinks; but this power of regulation can never be properly converted into a power of absolute prohibition, nor can the legislature be made the sole judges, when necessity exists to take away a man's property, or impair its enjoyment, or prohibit its use, or make a voluntary gift of it. In the language of Mr. George Wood, "There is, and, in the nature of the case, there must be, a line of demarkation between this legislative power, on the one hand, to impair, and even destroy property for those ulterior objects above alluded to (the preservation of life, health, religion, or morality), and, on the other hand, the power of the judiciary, under the fundamental law, to protect the citizen in his property against hasty or ill-advised legislation, aiming at the destruction of property when that necessity does not exist. By whom is that line to be drawn? The advocates of arbitrary legislative power say it must be done exclusively by the legislature—that they are the sole judges. This would render the fundamental law, as to its action upon the legislature, a dead letter. When they wish to destroy property by sumptuary laws, all they have to do is to aver, by way of enactment, that it is useless or noxious, and the hands of the judiciary are tied. It is said they are sovereign; but their sovereignty cannot screen them when their acts are brought to the touchstone of the constitution and the supervision of the judiciary, who are its guardians."

*Sixth.* This act is void because:

1. It does not prohibit the manufacture or importation of any species of intoxicating drinks, and therefore recognizes that the manufacture and importation are to continue. This is equivalent to declaring them legal. With this admission, the attempt to determine what quantity shall be sold at any one time is a violation of the manufacturer's, importer's, or retailer's right of property, he being the sole judge on that subject, the legislature having only the right, at furthest, to regulate the sale to such circumstances as will render the liquor detrimental necessarily, to the public health, peace, or morality. And here will apply the suggestion that a law of regulation must be reasonable: it is quite unreasonable

to suppose that the sale of liquors in quantities less than five gallons at a time, even by a licensed vender, necessarily tends to any public detriment. It is not the use, but the abuse of liquor that does the injury, either to the individual or the public. The abuse of any article of diet may lead to similar injurious results.

2. If one can lawfully manufacture these drinks in this state, he has the right to export them to other states or countries as a seller; and yet the general terms of this act would make him crimnial for so doing.

It is a great mistake to compare intoxicating drinks with gunpowder, nitro-glycerine, or saltpetre. They are not of themselves capable of serious destruction or injury, nor of being the means of mischief through some slight accidental cause, but are only injurious from the voluntary use of them to excess by human beings, and then acting upon the public chiefly in the way of example. This the law distinctly recognizes, because it provides that no person shall have a license who is not "of good moral character." So it is conceded by the legislature that a man who sells liquor by the glass is only qualified for that pleasing function by having this kind of character.

All property is protected by the constitution, without reference to whether its abuse engenders mischief. (*Wynehamer* agt. *The People*, 13 *N. R. Rep. p.* 378.)

*Seventh.* The act is void because,

1. It undertakes to confer upon the commissioners of excise, in the fourth section, legislative power. No such power can be constitutionally exercised in this state except by the legislature, or somebody chosen by the people; whereas the commissioners of exeise are appointed in and by this act. The fourth section provides for their granting licenses "upon receiving a license-fee to be fixed in their discretion, and which shall not be less than thirty dollars nor more than two hundred and fifty dollars." This amount could only be fixed by the legislature, if any license-fee could be exacted. Assuming that the applicant proves himself to be of "good moral character" no good reason can be

imagined why a specific sum should not be charged for each license, and the commissioners of excise could not be allowed any .discretion on the subject. (*Smith* agt. *Levinus*, 8 *N. Y. Rep. p.* 472.)

2. The legislature have no right to require that a man shall be of good moral character in order that he may dispose of property that he owns.

*Eighth.* This act is also unconstitutional, because, as to quantities of liquors not less than five gallons, it provides that persons not licensed, but who own these liquors, may not sell them at all, if any part thereof shall be "drunk or used in the building, or in any building, yard, garden or inclosure communicating with or in any public street or place contiguous to the building in which the same shall be kept, sold or disposed of." The whole theory and construction of the act being founded on an assumption that the sale of five gallons and upward will not prejudice the public morals, health or peace, there is no authority to declare a sale of that quantity invalid by reason of the fact that some of .it, though without the consent of the vender, be used in some place contiguous to, or even forming a part of his premises. This is a restriction upon the use of his property, for which there is no constitutional warrant.

*Ninth.* The prohibition against the selling or giving away of liquors on Sunday is an unconstitutional restriction on the owner's rights, as appears from what has already been stated—an attempt by legislation to interfere with the religious faith and practices of those who do not believe that Sunday is the true Sabbath. It is giving a preference to one religion over another, in violation of section 3, article 1 of the constitution of this state, which provides that "the free exercise and enjoyment of religious profession and worship,. without discrimination or preference, shall be allowed in this state to all mankind."

*Tenth.* The act is also unconstitutional because it invests sheriffs, constables, policemen and other officers with powers not authorized by the constitution of the United States or of the state of New York, but delegated in express violation

of both. The federal constitution (*articl 4, amendments*) provides thus : " The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated ; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." By section 10 of this article these officers are authorized, on the mere statement of a licensed person that there has been any " disturbance, disorder or breach of the peace " in his place, without any oath or warrant, and though the offense did not occur in the presence of the officer, to cause all persons in the place to be removed therefrom. Section 6 provides that every person who violates any of the provisions of the act preceding that, shall, for each offence, be punished by fine of not less than $30 or more than $100, or by imprisonment of not less than ten nor more than thirty days, or by both fine and imprisonment, and to be also subject to a fine of $50, recoverable in a civil action brought by the commissioners of excise. Section 19 makes it the duty of " every sheriff, constable, policeman and officer of the police, to compel the observance, and to prevent the violation of the foregoing provisions of the law, if necessary, by summarily closing and keeping closed any places in which shall be violated any of such provisions." Section 20 confers on the officers before designated, authority to arrest all persons who violate any provision of the act, carry them before a magistrate to be dealt with according to that law—the magistrate to entertain any complaint for a violation made by any person under oath. See the opinion of the Hon. Samuel Beardsley, late a justice of the supreme court of this state, in a pamphlet containing various opinions on the prohibitory liquor law of 1855, page 39. Amongst other things he says :

" The act may do credit to the courage of its authors, for they have not hesitated to cast upon the lower grade of officers, judicial and ministerial throughout the state, powers of the most novel, sweeping and dangerous character. The execution of the act, so far as repects the judiciary, is com-

mitted, in a great degree, to justices of the peace and other subordinate magistrates, whose powers have hitherto been circumscribed within narrow limits cautiously defined. * * * This is a power which no man should possess, and to the exercise of which no people, fit to be called free, would be likely to submit."

Amongst other offenses authorized to be dealt with in this absolute and arbitrary manner by officers acting either on mere unsworn information, or of their own accord, are :

1. Selling or giving any strong liquors, wines, ale or beer to any apprentice or person under eighteen years of age, knowing or having reason to believe him to be such, without the consent, in the case of an apprentice, of his master or mistress, and in the case of a person under eighteen years of age, of his father, mother or guardian.

2. Selling to a husband or wife any such liquids, against the request of the husband or wife, as the case may be, or the parent or child of such purchaser. In neither of these specified prohibitions is any criminal or wrongful intent specified or implied. It may be that the sale to the apprentice is for his master, or for some other person, at whose request he acts; but even if for himself, it may not be, injurious, and the section does not require that it must be to create the wrong. And so, the remonstrance of the child five years of age, though against the father perfectly temperate and well behaved, is to deprive him of what he wishes to purchase, unless the seller is willing to subject himself to a criminal prosecution, and the punishment provided for by the sixteenth section.

*Eleventh.* The act violates the constitution (as the reasons already stated will show), in its prohibition against the sale of any liquors between the hours of twelve at night and sunrise.

*Lastly.*—In its design, general scope, and effect, and in nearly all its details, this act is an attempt, by arbitrary legislation, to impair not only the right of property in liquors, if not to destroy such right, but also to interfere with the enjoyment in a rational manner by temperate people, who

are not ascetics or fanatics of beverages, which the experience of mankind shows and this act recognizes, can be used in moderation, not only without injury, but with benefit. This is particularly true of light wines, ale, beer of all kinds, and especially that harmless and excellent liquid called "lager-bier." We do not deny that the legislature might punish intoxication, or the man who induced it with the intent to do so, or who persisted in selling to any one person more liquor than he might plainly perceive he could use without injury, or the carrying on of the liquor business in such a manner as to excite open public immorality, indecency, or breach of the peace. But neither of these consequences arises out of the mere use of liquor, and the error of this, like all oppressive legislation in this state is, that the law does not aim at the specific abuses which produce the public injury, but at the traffic, which may be lawful and innocent. (See opinion of the late Nicholas Hill, jun., p. 108 of pamphlet, where this subject is exhaustibly discussed).

His honor, Judge CARDOZO, has recently rendered a decision, the principle of which applies to these cases, namely, that a license unexpired at the time this act went into effect, was a contract between the state and the licensee, which could not be constitutionally destroyed. The same rule must apply to all liquors held as property by all persons in the state, which were purchased by them as lawful property —the state holding the position of contractor, that having acquired it, they might dispose of it. The power of disposition being taken away, the property may be said to be destroyed. (See 33 *Maine, p. p.* 558 and 562, *Green* agt. *Biddle*, 8 *Peters, p.* 1).

SAMUEL A. MORRIS, *district attorney, for the People.*

The applicant was arrested for selling strong and spirituous liquors without a license, and taken before the police magistrate in pursuance of the law regulating the sale of intoxicating liquors within the metropolitan police district. While in custody upon this charge, a writ of *habeas corpus*

was sued out in his behalf, upon the ground that the complaint against him charged no offence against any valid and subsisting law of this state. That this act under which he was held was unconstitutional; null and void.

The only questions presented therefore is the validity of such imprisonment, which involves the validity of the "act to regulate the sale of intoxicating liquors within the metropolitan police district of the state of New York," (passed April 14, 1866), which may be briefly analyzed as follows:

Section 1. Designates the board of excise.

Section 2. Provides for the appointment of an inspector.

Section 3. Prohibits the sale (by retail) of liquor without a license.

Section 4. Authorizes the board to grant licenses.

Section 5. Designates the form, manner of signing and posting the licenses, and declares its non-exhibition presumptive evidence against the person.

Section 6. Points out the requisites of an application for license.

Section 7. Provides for sales in quantities of more than five gallons, under certain restrictions.

Section 8. Prohibits sales on Sundays, election and town meeting days.

Section 9. Compels the board to keep a record of licenses.

Section 10. Authorizes any person licensed to call upon certain officers to assist him in preventing and suppressing breaches of the peace in his place.

Section 11. Prohibits sales to minors and apprentices without the consent of parent or master.

Section 12. Prohibits sales to drunkards and persons intoxicated.

Section 13. Prohibits sales to husband or wife, parent or child, contrary to the request of either against the other.

Section 14. Compels persons to close on Sunday, and from 12 midnight till sunrise.

Section 15. Prohibits persons not licensed from having for sale, or advertising to sell, &c., in quantities less than five gallons.

Section 16. Declares the penalties.

Section 17. Prevents the collection of debts incurred on sales less than five gallons, if drank on the premises.

Section 18. Declares a conviction for a violation of the law a forfeiture of the license.

Section 19. Authorizes certain officers to compel obedience to the law, and to use the necessary means for that purpose.

Section 20. Authorizes officers to arrest for violation and take the parties before magistrates.

Section 21. Provides for the arrest of intoxicated persons and points out the proceedings thereon.

Section 22. Empowers the board to examine as to violations, and authorizes them to revoke licenses.

Section 23. Designates the uses to which the license money shall be applied.

Section 24. Directs courts to charge grand jury, &c.

Section 25. Makes parties liable in damages to the persons injured by unlawful sales.

Section 26. Repeals inconsistent laws.

I am aware that the foregoing analysis will not pass muster with some of the modern constructionists, who seem to imagine that common sense and legislative intent are absolete, so far as the construction of statutes are concerned. Yet, I submit it fairly presents the substance of this *terrible act, which, if allowed to stand would overturn society, subvert republican government and reduce us to a hopeless state of vassalage.* Indeed, one would almost suppose from reading the arguments that have been made, and the opinions delivered, that some great and overwhelming calamity had befallen the community. Yet, what are the facts ; why, since this law went into operation, there have been about one-half as many intoxication cases before our police magistrates on Monday mornings as there were previously. And this calamity is seen in many other ways not less gratifying than the one mentioned.

I venture the prediction that before your honor will arrest such a calamity, you will feel impelled by an inexorable constitutional necessity.

I make these remarks because this law has been set aside, with all the flippancy that a magistrate would dispose of a case of *petit larceny*.

The time has been when judges felt the full weight of responsibility resting upon them, when the constitutionality of a legislative enactment was presented for their adjudication. And I am happy to know that the ermine is yet worn by some, who can rise above temporary clamor and noisy threatenings; draw their inspiration from the great jurists who have gone before them; and adjudicate questions of such grave import with becoming dignity.

I am sure your honor appreciates the importance of the question under discussion and will give it your careful consideration. The short time that has elapsed since this case was brought before this court, and the press of official business have precluded the possibility of my making anything more than a partial preparation, and I shall, therefore, leave the burden of the argument to my learned associate, Gen. Crooke.

With these preliminary remarks I will proceed to state the propositions I have thus hastily prepared:

I would remark *in limine*, that the objections urged against the validity of this act, if sound, lead logically to the conclusion, that there never has been a valid excise law passed, notwithstanding courts and judges since the organization of our government have not only recognized their necessity, but have asserted and affirmed their binding force. To deny such legislative power, is to admit that the organic law is fatally defective, because, in that case, it fails in the very object, purpose and design of its creation.

For all the purposes of this argument, the authority must be assumed in the first instance, because the legislative power extends over all the known and recognized subjects of municipal regulation, unless restrained by some positive rule of the fundamental law. Those therefore, who put the legislative authority in controversy take upon themselves the burden of showing the limitation or restriction.

(*a*) In *ex parte M'Cullum*, Ch. J. SAVAGE says: "Before

the court will deem it their duty to declare an act of the legislature unconstitutional, a case must be presented in which there can be no rational doubt."

In the case of *Morris* agt. *The People*, LOTT, senator (now an associate of your honor), says: "The presumption is always in favor of the validity of the law, if the contrary is not clearly demonstrated.".

(*b*) "The act is confessedly within the general scope of legislative power, and must be held valid and operative, unless shown to be an act of legislation which is forbidden, either in express terms or by plain and obvious implication, by the organic law of the state."

All laws are presumptively constitutional. The governor, before he approves, is presumed to take the highest opinions on the subject, particularly when the question has been raised in legislative debate, antecedent to the passage of the law, as was the case with this act.

See legislative reports of March, 1866, and refer to practice *passim*.

The following additional illustration of the third point will suffice:

Judge EDMONDS in *Newell* agt. *The People* (7 *N. Y.* 109), quoting the sentiments of Ch. J. MARSHALL, he said: "I enter upon the examination thoroughly imbued with the principle that the task of determining that a law is void by reason of its repugnancy to the constitution, is at all times one of extreme delicacy; that it ought seldom, if ever, to be done in a doubtful case; that it is not on slight implication and vague conjecture, that the legislature is to be pronounced to have transcended its powers (*Fletcher* agt. *Peck*, 6 *Cranch*, 128): that it is only in express constitutional provisions limiting legislative power, and controlling the temporary will of a majority by a permanent and paramount law, settled by the deliberate wisdom of the nation, that we can find a safe and solid ground for the authority of the courts of justice to declare void any legislative enactments (*Cochran* agt. *Van Surlay*, 20 *Wend.* 382); that in constructing the language of a constitution we have nothing to do with arguments *ab*

*inconvenienti*, for the purpose of enlarging or contracting its import, the only sound principles being, to declare *ita lex scripta est*, to follow and obey (*People* agt. *Morrell*, 21 *Wend.* 584) ; that there is no safe rule for construing the extent or limitation of powers in a constitution other than is given by the language of the instrument which confers them, taken in connection with the purposes for which they were conferred (*Gibbons* agt. *Ggelin*, 9 *Wheat.* 188), and that the opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other. (6 *Cranch*, 183 ; 1 *Cowen*, 564.)

It is conceded that laws which destroy the essential character of property as such, are repugnant to the fundamental law.

Of this class was the act of 1855, commonly called the Maine law. The law under consideration is in no legal sense prohibitory, but simply regulatory, and the opinions in the *Toynbee* and *Wynhamer* cases have no application whatever to this law.

In those cases, however, the legislative power to pass regulatory liquor laws is distinctly admitted (13 *N. Y. R.* 378).

The act is simply an act of local police regulation, supplemented to the metropolitan police law, and in aid of it, and throughout is in harmony with the principles decided by the United States supreme court in the Passenger cases (7 *Howard*).

It is the admitted law, that intoxication, such as occasions or threatens disorder to the community, is a criminal indulgence. The old maxim of the law is, that every man shall so use himself or his property as not to infringe upon the rights of others, or injure those rights. This act has various regulations and provisions, all in harmony with the object sought to be obtained. *First.* It says no man shall sell liquor in small quantities without obtaining permission under the law to do so, to the end that improper persons may not be intrusted with the sale of an article so liable to lead to criminal indulgence, and that those who do sell may thus better restrain this criminal indulgence of others.

*Second.* Those who get this permission shall, as matters of police regulation, respect Sunday observance—which is the common law of the land—(*per Judge* ALLEN *in The People* agt. *Lindenmuller* 33 *Barb. S. C. R.* 548). They shall not disturb the people in the enjoyment of reasonable hours of slumber at night, and shall not infringe upon the rights of parents and children, or guardians and wards, or masters and apprentices.

It also contains several other regulatory provisions to which I shall not advert.

This law is not inimical to the constitutional inhibition against local laws containing more than one subject, which shall be expressed in the title.

*First.* It contains but one subject, the regulation of the sale of intoxicating liquors.

*Second.* A statute cannot be termed local which provides for the government of a considerable portion of the territory and population of the states, delegating powers of legislation, and authorizing the passage of laws, as well as the administration of them, which, in their operation, affect all the citizens of the state whose persons or property come within the limits of that jurisdiction. (*Phillips* agt. *Mayor,* 1 *Hilton,* 483 ; 1 *Selden,* 285; 4 *Selden,* 241 ; *People* agt. *McCann,* 16 *N. Y.* 58. *See also opinion in* 1 *Smith,* 532.)

The suggestion that, because the act imposes penalties, and points out the mode of enforcing them, it therefore embraces more than one subject, is clearly fallacious, otherwise it would be necessary to embody the act or its entire substance in the title.

Conceding it to be a local act within the meaning of the constitution, it could not contain a provision for the appointment of commissioners to open a street in the city of Brooklyn, or regulate the Prospect park.

The present law, like all general laws, simply contains details for its enforcement.

It is also contended that the act creates new offenses, and declares criminal, acts not morally wrong, and for these reasons is obnoxious to the organic law. In the first place, it

creates no new offenses, and in the second place it is per-
fectly competent for the legislature to penally visit acts not
morally wrong, as criminal *per se.*

Penal laws affect from motives of expediency, quite as
much as from considerations of morality.

It is not wrong *per se* to row a boat ; yet, to do so within
the harbor of New York without a license, is a penal offense.
It is not wrong *per se* to carry a stick loaded with lead called
"a billy ;" yet, from motives of expediency and public secu-
rity, the law prohibits such carrying.

It is not morally wrong for a man to support his family
by following the occupation of a cartman ; yet he cannot do
so without permission.

There are thousands of things that we would have both a
natural and moral right to do, but for the restraints imposed
by society for self protection and preservation.

There can be no society without restraints and regulations.

*Third.* The suggestion that the act is unconstitutional
and void " because it makes no distinction whatever between
imported liquors and those of domestic manufacture," is
distinctly met by the case of *Smith and Bunce* agt. *The
People* (1 *Par. Cr. R.* 587). In that case Judge STRONG
said : "After the repeated decisions of the courts of this
state it is too late to contend that the payment of duties
upon goods imported from foreign countries operates as an
absolute and incontrovertible license to sell them. If it
would, it would restrict the state legislature from adopting
the most necessary police regulations—a power so essential
to their well being, if not to their political continuance, that
it cannot be inferred that the framers of our national consti-
tution so abrogate it."

Again, he says, "The state, however, has the right to adopt
general regulations in reference to its internal affairs, which
shall include imported goods equally with those of domestic
origin. Thus they can tax both together. So they can,
when in their opinion the public good requires it, impose
restrictions upon their vendition, as in the instances of
licenses to peddlers, the imposition of duties on goods sold

at auction, and the restrictions upon the sales of medicines by apothecaries in New York city." "It surely can be no objection to a charge for a license to pursue a particular occupation, that the grantee may deal to some or a considerable extent in foreign goods upon which duties have been paid."

*Fourth.* It is also contended that the act is void because it contains a prohibition against giving away one's property; and the point is illustrated as follows, to wit : "It might be that a person who was refused a license, but who owned a large stock of liquors, would desire to make them a present to one who had received a license; this act would prevent his doing so."

Now, it is perfectly manifest, that the act works no such results. The plain and obvious meaning of the prohibition against giving away liquor was to prevent fraudulent violations of the law—such as charging 20 cents for a cracker and giving a glass of brandy with it, and other like subterfuges.

The most startling announcement upon this point, however, was made by Recorder HACKETT, who said "if this excise act be valid, every person who gives his guests a glass of wine commits a misdemeanor." Only think of it—all the *bon ton* of New York and Brooklyn subject to indictment and liable to be sent to the penitentiary! Why, before to-morrow morning Fifth avenue may be in the tombs and Clinton avenue in the station house. To say that such a construction is opposed to common sense will not do, because judicial wisdom has declared it. To appeal to the *Behan case* (3 *Par.* 687) decided by the court of appeals, holding the rule of construction to be "simply a question of legislative intent," is of no avail, because "old things are passed away; behold all things are become new."

One has but to read a few modern decisions, to know what fools MARSHALL, CATRON, SPENCER COWEN, KENT and many other so called jurists were.

The law is unconstitutional, because "in overruling the demurrer now interposed, one duty would alone remain to

the court, which would be to sentence the defendants under the law, for a misdemeanor, and to the penitentiary. In misdemeanors there is no *respondia ouster* after demurrers. On the other hand, if the demurrers are sustained for either of the various causes assigned by the counsel for the defendants, the decision of this court should be respected by the various magistrates and peace officers, until reversed by a higher and appellate court."

To prevent the defendants from going to the penitentiary, and render a decision to be "respected by magistrates," were certainly grave considerations against the constitutionality of the law.

Again, " whoever takes the trouble to read the old statutes of England on this subject, learns from recitations of the facts therein made that the enforcement of this class of laws was always difficult."

Certainly, laws " difficult to enforce," must be unconstitutional. Especially so, as no man is allowed to sell under it, except he be of " good moral character ;" and "nothing was said upon the argument as to the mode by which the board practically acquainted itself with the subject of character."

But, seriously, are such arguments as have been adverted to, entitled to any consideration whatever ?

The very fallacy of the whole tenor of the recorder's reasoning is a strong argument in favor of the validity of the law.

Constitutional rights are clear, specific and well defined, and do not require such technical quibbles to demonstrate them.

*Fifth.* It was stated on the argument before the recorder that the act was in conflict with the constitution, because section 10 of the act authorizes sheriffs, &c., " on the mere statement of a licensed person that there has been any disturbance, disorder or breach of the peace in his place, without any oath or warrant, and though the offense does not occur in presence of the officer, to cause all persons in the place to be removed therefrom."

The above is an entire misapprehension of the whole

scope of that section. It is the person keeping the place who is authorized to do all the things specified in that section, and he may simply call in the assistance of such officer. In other words it simply authorizes the person to keep an orderly, well regulated place, which he would have the right to do without the assistance of this section.

*Sixth.* In fact there is no authority conferred upon officers by this law, that they have not for centuries possessed.

It is the common law right of officers to arrest without process, for misdemeanors committed in their view. That is precisely what they are authorized to do under this act, as I understand it. They "shall forthwith arrest all persons who shall violate any of the provisions of this act" (§ 10). How can the officer comply with this provision, except the violation is committed in his view? It does not say he shall arrest upon information of some other person. But shall "forthwith," that is, then and there, at the time of the commission of the offense. Is not that the plain and obvious meaning and intent of this section? It seems to me it does not admit of a doubt.

While courts should be zealous in guarding the rights of citizens, the good order and well being of the community are subjects entitled to some consideration.

*Seventh.* The proposition that the whole law is "unconstitutional and wholly void," because it impairs the obligation of contracts, cannot be sustained for a moment.

That this act in terms revokes all pre-existing licenses for the sale of intoxicating liquors, will not be denied.

It was strictly within the power of the legislature thus to revoke an unexpired license. No limitation to the power of the legislature in this respect can be pretended, except such as may be found in that clause of the constitution of the United States which forbid the obligation of contracts to be impaired. And that clause has no application to the exercise of police power, such as the granting, withholding, and revoking of a license, and similar acts. *(Calder* agt. *Kirby,* 5 *Gray,* 597 ; *State* agt. *Holmes,* 38 *N. H.* 225 ; *Hine* agt. *State,* 1 *Ohio State,* 15; *Coates* agt. *Mayor* 7 *Cow.* 585 ;

*Stuyvesant* agt. *Mayor, Id.* 588; *Corporation, &c.* agt. *Mayor,*
5 *Cow.* 538; *Butler* agt. *Pennsylvania,* 10 *How.* 416; *Gossler*
agt. *Corporation, &c.* 6 *Wheat.* 697; *Lindenmuller* agt. *People,*
33 *Barb.; Baker* agt. *City of Boston,* 12 *Pick.* 184; *Alzer* agt.
*Weston,* 14 *John.* 231; *People* agt. *Morris,* 13 *Wend.* 325–329.)
The court, in the case of *Hine* agt. *State,* quoted *supra,* say:
"Connected as the subject is with the public police and
domestic regulations of the state, the legislature had the
power, on the ground of protecting the health, morals and
good order of community, to revoke or provide the mode of
revoking the unexpired licenses granted under the act of
1851."

In *Gatzmuller* agt. *People,* (14 *Ill.* 142), upon this subject
the court said: "These powers of general legislation on
public subjects are functions which government cannot be
presumed to have surrendered, if indeed, they can under
any circumstances be justified in surrendering them."

Upon the same point the court is also referred to the
remarks of ex-Judge BOSWORTH, made before the police
board, and published on Saturday last.

*Eighth.* I will simply call your honors' attention to the
familiar principle that a part of a law may be void by reason
of its repugnancy to the constitution, and the other part
may be valid, unless the two parts are so blended together,
that the one cannot be enforced without the aid and exist-
ence of the other. I do not propose to elaborate this point,
because, I do not see anything in the law calling for the
application of that principle.

With these hastily prepared and desultory observations, I
will close what I have to say by a very few general remarks,
which I feel called upon as prosecuting officer to make.

Shortly after the passage of this law I was called upon at
a public meeting for my opinion as to its validity. I
believed then, as I now do, that the law was constitutional,
and so stated; at the same time advising them to obey it.
I have had no occasion since to regret what I then said, and
would not if I could, change a single word I then uttered.
I then and now believe that it is for the interest of those

engaged in the liquor business to obey the law. I then believed and now know, that they are being misled by lawyers who believe as firmly as I do in the constitutionality of this law. Ask these lawyers their opinions and one will say " The law is perfectly constitutional ;" another that his object is to " block up the courts ;" another, the purpose is delay, " that his clients in the meantime can make more than enough to pay costs ;" and again, that " courts dare not enforce it, and juries will not convict." These remarks have no application whatever to the learned counsel in this case. To all such I say, that courts in Kings county dare enforce, the public officer dares prosecute, and jurors will convict upon proper testimony.

Yet, notwithstanding the fierce denunciations against the law, the promises of immunity held out to them by certain lawyers ; notwithstanding that injunctions in favor of liquor dealers have almost been forced upon them by Judge CAR-DOZO, whose injuction mill has ground them out at the rate of about twenty a minute, to the great scandal of the judiciary ; notwithstanding the captivating advertisements, which appear as thick as leaves in Valambrosa, offering free rum, easy injunctions, and " no questions asked," over six thousand persons have complied with its provisions by taking out licenses, and many of these since the injunction mill has been in full operation.

Are those who have complied with the law entitled to no consideration, to no protection ? Is it right and just that those who defy the law should enjoy the same privileges as those who obey it ? Is it not an imperative duty to protect those who have complied with the law in the enjoyment of their rights ?

Does not justice to these men, to society, and to humanity call upon us to do our whole duty in maintaining and executing this law ?

But it is called an infamous, an odious, a tyrannical and oppressive law.

Tell me that a law is infamous that leaves our police courts almost desolate and abandoned on Monday morning ? Tell

me that a law is odious that lessens by one-half, the number of arrests for drunkenness, disorders, and breaches of the peace on Sundays? Tell me that a law is oppressive and tyrannical that leaves hundreds of fathers of families to spend their Sunday nights at home, instead of in the station houses? Away, railers against the law, with such arguments, instigated by a false policy, and speak out the honest sentiments of your hearts, and the drunkard for whom you plead, and his famishing children, against whom you plead, will bless you.

But one word in conclusion, and I leave the case with my learned associate. I am fully aware that this, as the former law, affects a large class of our citizens, who, as a general thing, use light drinks, containing but a very small per centage of intoxicating properties. I maintained, when in the legislature, and have ever since advocated, that true temperance would be promoted by encouraging the more general use of light drinks, such as lager and the various kinds of light wines; and I have no doubt the legislature will in time see the necessity of such encouragement.

But until this law is changed, or modified by the legislature, I trust it will not be set aside on slight and trivial grounds.

PHILIP S. CROOKE, *counsel for People.*

1. The legislative power is restricted only by the constitution of the United States and of this state. (1 *Kent's Commentaries, p.* 448; *Burch* agt. *Newbury,* 10 *N. Y Rep.* 392; *Leggett* agt. *Hunter,* 19 *N. Y. Rep.* 445; *Grant* agt. *Courter,* 24 *Barbour,* 238.)

2. The constitution should not be invoked unless upon occasions which both require and deserve its interposition. (*The People* agt. *Supervisors of Orange,* 27 *Barbour,* 594. EMOTT, *J.*)

3. "Deprived." The meaning of the word "deprived," as used in section 6 of article 1 of the constitution, is the same as the word "taken" in the same section. And

when property is not seized and directly appropriated to public use, though it be subjected, in the hands of the owner, to greater burdens than before, it is not contrary to section 6. (*Abbott's Digest. vol.* 1 *p.* 658, *and cases cited ; Grant* agt. *Courter,* 24 *Barbour,* 232.)

4. The prohibitory law of 1855 was not an excise law; the decisions of *Wynehamer* and *Toynbee* are not applicable. The act of 1855 ordered the confiscation and destruction of property.

5. The title of the act of 1866 is complete and correct. " The title must express the *subject,* not object of the act." "An abstract of the law is not required in the title " (*People* agt. *Lawrence,* 36 *Barbour,* 177).

6. The 10th section of the act of 1866, which has been complained of as investing the police with unconstitutional powers, has been misstated. It directs the licensed person to give notice of disturbances in any place so licensed, to the police. And the licensed person (not the police) shall cause all persons to be removed therefrom, and the place to be closed, and kept closed until quiet is restored. In this section, the police are merely recipients of the notice.

7. Arrests for misdemeanors " forthwith " to carry the offender before a magistrate, are not unconstitutional—an arrest, forthwith, is an immediate arrest.

8. It is the duty of the police to compel the observance and prevent the violation of all laws ; the 20th section of the act is merely declaratory thereof. The direction " if necessary, by summarily closing and keeping closed any place in which shall be violated any of such provisions," is a mere police enactment, similar to many others on our statute books. The necessity of preventing riot—and the breach of the peace would justify it.

9. The validity or constitutionality of the act would not be invalidated by any of the provisions designed to prevent or punish its infraction.

10. The legislature have full power to make excise regulations for any portion of the state.

In the matter of James De Vaucene.

A. OAKLEY HALL, *district attorney of N. Y. on same side.* (*His points used in the cases before Judges* CARDOZO *and* HACKETT.)

He rose for the purpose of opening the argument for the people, not in anywise intending to reply to the learned counsel on the other side. He had not examined this case with the particularity which its importance would seem to demand, for the reason that he was busily engaged and depended upon the able associate counsel (Messrs. Tracy & Bliss), who had given the matter such full examination. Here were four-fold indictments: 1st. For selling liquor without license. 2d. Being licensed, that they sold on Sundays. 3d. Selling liquor on Sunday, licensed or unlicensed; and 4th. Selling between 12 o'clock at night and sunrise.

1. Before a court will pronounce a law unconstitutional, a case must be presented in which there can be no rational doubt.

2. The constitution is to be liberally construed in upholding the constitutionality of statutes.

3. In construing constitutions, the court have nothing to do with arguments *ab inconvenienti*, for the purpose of enlarging or contracting its import—the only sound principle being to declare *ita lex scripta est*—and to follow and obey.

4. Courts at *nisi prius* are in practice both to hear and treat constitutional questions—forcing the litigant to moot them in banco and the higher tribunals.

5. Such of the defendants who are here licensed, and offending under the police regulations of this license statute, cannot raise this unconstitutional question. Because they have accepted the act.

6. This whole law is in no part prohibitory, but is entirely regulatory, and is outside of the opinions in the *Toynbee and Wynhamer cases.*

7. This act is simply an act of local police regulation, supplemental to the metropolitan police law, and in aid of it.

8. In fine, the statute follows the admitted law, that such intoxication as occasions or threatens disorder to the com-

munity is a criminal indulgence. This civil statute has two regulatory branches : *First*. It says no man shall sell liquor without asking permission of the law to do so, to the end that he may better restrain this criminal indulgence of others. *Second*. Those who get this permission shall, in matters of police regulations, respect the Sabbath, and shall not infringe upon the rights of parents and children.

9. Nor is the law unconstitutional because it is a local law, expressing in its title more than one subject. The law expresses only one subject—the regulation of the sale of liquors.

10. It is a fallacy to say that an act not morally wrong, or criminal *per se*, cannot be penally visited.

Mr. Tracy responded to the argument of Mr. Brady, that if the counsel was sustained in the monstrous proposition advanced, no excise law which could be enacted would be valid   The whole spirit of the law was to regulate the sale of intoxicating liquors, and he contended its execution would have a beneficial effect.

CHARLES TRACY, GEORGE BLISS, JR. *and* A. J. VANDER-POEL, *on same side*. *(Their points used in the cases before Judges* CARDOZO *and* HACKETT).

1. We deny that the act of April 14, 1866, is unconstitutional.

It is to be remembered that the courts are bound to presume everything in favor of a law passed by the legislature, and that it is to be declared void only when no other conclusion is possible. *(People* agt. *Huntington*, 4 *N. Y. Legal Obs*. 188 ; *People* agt. *Supervisors of Orange*, 17 *N. Y.* 235, 241 ; *Sun Mutual Ins. Co*. agt. *City of New York*, 5 *Sandf*. 10.)

And that the constitution is to be liberally construed in upholding the validity of statutes. *(People* agt. *Supervisors of Orange*, 27 *Barb*. 575, 593.)

2. It is further to be remembered, that a provision in a law which may be in the opinion of the court unconstitu-

tional, does not necessarily vitiate the whole law. It may be unconstitutional in part, and constitutional in part. It is only where the unconstitutionality is inwrought into the very framework of the law that the whole falls. For instance, the nineteenth section of the act of April 14, 1866, may be held unconstitutional, and the rest of the act still remain. The same is true of the tenth, eleventh, twelfth, thirteenth, fifteenth, twentieth, twenty-first and twenty-third sections. One or all of them may fall, and the act still stand. This is probably true of other sections. We only mention these, because these have been attacked by different persons. It is even true of parts of sections. The provision as to keeping in the third section may be held invalid without invalidating the rest of the section. ( *Commonwealth* agt. *Hitchings*, 5 *Gray, Mass.* 482; *Commonwealth* agt. *Clapp, Id.* 99; *License Cases,* 5 *How. U. S.* 504; *Sedgwick on Construction of Statutes,* 489.)

In the case in *Howard,* the law in its application to imported liquors was admittedly unconstitutional, yet the indictments were sustained by the supreme court of the United States. In the other cases the point is directly decided.

3. In what respect, then, is the act of April 14, 1866, unconstitutional ?

So far as we know, it has been attacked upon the following somewhat numerous grounds :

1. Because it interferes with the obligation of contracts. 2. Because it deprives persons of their property. 3. Because it violates the constitution of the United States by preventing the sale of imported liquors. 4. Because the law confers legislative powers upon the board of excise. 5. Because it makes criminal an act innocent in itself. 6. Because it deprives persons of liberty without due process of law. 7. Because of the provision for the appointment of the board. 8. Because it introduces new rules of evidence. 9. Because so far as Westchester is concerned, it is a prohibitory law. 10. Because the moneys raised are unconstitutionally appropriated. 11. Because there is no sufficient repealing clause.

12. Because the title is not in accordance with the constitution. 13. Because it prevents a man from giving away his own property. 14. Because it interferes with the free enjoyment of Sunday. 15. Because it makes what are designated as geographical crimes. 16. Because part of the moneys raised are to be expended out of the county and district in which they are raised. 17. Because it confers judicial powers on the board. 18. Because the jurisdiction of the inspector of excise is more extensive than that of the board. 19. Because it confiscates property, inasmuch as it forbids giving it away without a license, and provides for no license for giving it away. 20. Because it requires a man to close his premises.

We believe these are the only points on which it has yet been claimed to be unconstitutional.

Let us examine these objections in detail:

1. As to interfering with the obligation of contracts.

(*a*) So far as there is anything judicially before this court, there are no contracts with which it interferes.

(*b*) But it may be said there were outstanding licenses granted under the law of 1857, which had not expired when the law of 1866 took effect, and hence the latter act impaired the obligation of these contracts.

To this we make several replies:

*First.* A license is not a contract within the meaning of the constitution of the United States. This is so both by the very meaning of the word license and by the decisions. A license cannot be property or the subject of contract. It cannot be assigned or taken on execution, (*State* agt. *Holmes*, 33 *New Hamp.* 225; *Calder* agt. *Kirby*, 5 *Gray*, 597; *Hirn* agt. *State*, 1 *Ohio State* 15; *Phalen* agt. *Virginia*, 8 *How. U. S.* 167; 2 *Parsons on Contracts.* 538; *Parkinson* agt. *Maryland*, 14 *Md.* 184· *Toledo Bank* agt. *Bond*, 1 *Ohio State*, 654.)

*Second.* Licenses to sell liquors are a portion of the police system of the state, granted in the exercise of its police powers, and not the subject of contract within the meaning of the constitution of the United States. (*Coates* agt. *Mayor*,

7 *Cow.* 585 ; *Stuyvesant* agt. *Mayor, Id.* 588 ; *Brick Church* agt. *Mayor,* 5 *Cow.* 538 ; *Mayor* agt. *Second Ave. R. R. Co.* 32 *N. Y.* 261, 272 ; *S. C. below,* 12 *Abb.* 364, 374 ; *Mayor* agt. *Brittan,* 12 *Abb.* 367, 369, *note ;`  State* agt. *Mayor,* 3 *Duer,* 148 ; *Wynehamer* agt. *People,* 13 *N. Y.* 378, 411, *per* JOHN-SON, *J; City of New York* agt. *Miln,* 11 *Peters* 102, 138.)

*Third.* Even were these powers the subject of contract, it was not within the power of the legislature to barter them away. Even had the legislature enacted in express terms that licenses under the act of 1857 should be irrevocable, they could not thereby have bound their successors. *(Butler* agt. *Penn,* 10 *How. U. S.* 416 ; *Thorpe* agt. *R. & B. R. R. Co.* 27 *Vermont,* 141 ; *Brewster* agt. *Hough,* 10 *N. H.* 138 ; *Mott* agt. *Penn. R. R. Co.* 30 *Penn.* 9 ; *Charles River Bridge* agt. *Warren Bridge.* 11 *Pet.* 548 ; *People* agt. *Mayor,* 32 *Barb.* 112 ; 2 *Parsons on Contracts,* 538 ; *East Hartford* agt. *Hartford Bridge Co.* 10 *How. U. S.* 533.)

*Fourth.* But the licenses under the act of 1857 are, by the very terms of the act, revocable, and the power of revocation thus reserved may be exercised by the legislature as well as by the court, for it is to be remembered, that in such cases every presumption is in favor of the retention of power by the state and against the grantee. (2 *R. S.* 5*th Ed.* 940, § 5 ; *Laws of* 1857, *Chap.* 628, § 4 ; *Jefferson Branch Bank* agt. *Skelly,* 1 *Black. U. S.* 446.)

*Fifth.* It is by no means clear that the act of 1866 even attempted to revoke the licenses granted under the act of 1857.

*Sixth.* Granting that the licenses under the act of 1857 were valid contracts, which the law of 1866 undertook to revoke, and that this could not constitutionally be done, this still does not invalidate the whole law. It is still valid as to all but those having unexpired licenses under the act of 1857, while such persons, if indicted for violations of the act of 1866, have only to produce their licenses. This is a very different case from the law of 1855, in its operation as a pro-hibitory law, which, it was held, did not permit a distinction

between liquors on hand at the time of its passage and those procured afterwards. *(See cases already cited.)*

2. As to depriving persons of their property without due process of law—

We answer that no one is *deprived* of his property. No property is *taken*. Its use only is regulated, and such regulation is perfectly constitutional. Every license law that ever was passed, every health law, and thousands of laws and municipal regulations, do this. *( Wynehamer* agt. *People*, 3 *Kern.* 386, 398, 401, 422, 435 ; *People* agt. *Toynbee*, 2 *Parker's Crim. R. per* SELDEN, *J.*, 515, *per* HUBBARD, *J.*, 552 ; *Brick Church* agt. *Mayor*, 5 *Cow.* 538 ; *Coates* agt. *Mayor*, 7 *Cow.* 585 ; *State* agt. *Mayor*, 3 *Duer*, 148 ; *Grant* agt. *Courter*, 24 *Barb.* 232 ; *People* agt. *Mayor*, 32 *Barb.* 112 ; *Beecher* agt. *Farrar*, 8 *Allen Mass. R.* 325 ; *Baker* agt. *Boston*, 12 *Pick.* 184 ; *East Hartford* agt. *Hartford Bridge Co.* 10 *How. U. S. R.* 533 ; *Commonwealth* agt. *Alger*, 7 *Cush. Mass.* 53, 84 ; *Commonwealth* agt. *Tewkesbery*, 11 *Met. Mass.* 55.)

The so-called boat law of 1866, under which convictions have been had in this city, is an instance of a similar regulation.

3. As to violating the constitution of the United States.

This act does precisely what the supreme court of the United States has held legal. *(License Cases*, 5 *How. U. S. R.* 504 ; *Brown* agt. *Maryland*, 12 *Wheat.* 419, 441 ; *People* agt. *Huntington*, 4 *N. Y. Legal Obs.* 187 ; *Smith* agt. *People*, 1 *Parker's Crim. R.* 583.)

In the license cases (5 *How.*), the laws of the states forbade sales in less quantities than 28 gallons. There was no exception of imported liquors, and yet the laws were held constitutional.

Moreover, the United States law does not allow importations in quantities smaller than five gallons, and sales of that amount are not affected by the law of 1866.

4. As to conferring legislative powers. The only powers objected to are the right to fix the license-fee at any sum from $30 to $250.

There is nothing in the constitution forbidding this. All

that is forbidden is devolving upon the people of the state the legislative power. (*Bank of Rome* agt. *Village of Rome*, 8 *N. Y.* 44; *Starin* agt. *Town of Geneva*, 23 *N. Y.* 446; *Mayor* agt. *Ryan*, 2 *E. D. Smith*, 371; *Tanner* agt. *Trustees of Albion*, 5 *Hill*, 121, 131; *Stokes* agt. *Carpenter*, 14 *Wend.* 88.)

5. As to making criminal acts which are innocent in themselves.

Where is there any provision of the constitution forbidding this?

The 11th, 12th and 13th sections have been especially objected to. Similar provisions are to be found in almost every excise law that has ever been passed in this state. (*See Law of March*, 1788, *chap.* 48; *Law of* 1832, *chap.* 135.)

The bottle act, so-called, which made an innocent act criminal, has been upheld by the court of appeals (*People* agt. *Mullins*, 34 *N. Y.* 398).

6. Because it deprives persons of liberty without due process of law.

The 10th, 19th and 20th sections are especially objected to.

The 10th section simply gives the owner of premises power to clear them, that is, to revoke the permission under which persons came there, a power he had without the law, and which it is not unconstitutional to put into a statute, or to authorize the police to assist him in executing.

The 19th and 20th sections give power to police officers to close places and to arrest without warrant.

How is this unconstitutional?

An officer may, independently of the statute, arrest for a felony without having a warrant, even if he did not see the offense commited (*Holly* agt. *Mix*, 3 *Wend.* 350).

There is no provision in the constitution forbidding such an exercise of this power as given in those sections.

It is the business of the police to enforce all laws, and a power to arrest "forthwith," is constitutional. If it is held that such power is unconstitutional when the officer does not see the offense committed—which we deny—we answer, that

the section may well be construed as referring only to offenses witnessed by the officer, and that if such construction is necessary to uphold the section, it must, on the principle already stated, be given to it. In the same way as to closing the premises : Is it not constitutional to give power to the police to close a place where a riot or where a breach of the peace is in progress, and does this differ in principle ?

7. As to the mode of appointment of the board.

This is strictly in accordance with the decision of the court of appeals in *People* agt. *Draper* (15 *N. Y.* 532) ; *People* agt. *Pickney* (32 *N. Y.* 377).

8. As to the introduction of new rules of evidence.

It will be difficult to find anything in the constitution forbidding this, even if it is done.

The mineral water bottle act provided that mere possession of bottles, which had the maker's mark on them, but had been sold by him, should be evidence of criminality, and this has been sustained by the court of appeals. (*Laws of* 1860, *ch.* 117 ; *Mullins* agt. *People*, 34 *N. Y.* 398 ; *Hand* agt. *Ballou*, 12 *N. Y.* 541.)

But no new rule of evidence is introduced. All that is required is, that a man having a license must show it (§ 5), and such is the rule now. (*Potter* agt. *Deyo*, 19 *Wend.* 361 ; *Sheldon* agt. *Clark*, 1 *Johns.* 511 ; *Mayor* agt. *Mason*, 1 *Abb.* 344.)

9. As to being a prohibitory law, so far as Westchester county is concerned.

A reading of the law shows that the whole scope and purport is to exempt Westchester county from its operation. The wording is in some cases awkward, arising from the fact that the law as originally drawn included the whole metropolitan district, but was amended during its passage through the legislature so as to exclude Westchester.

10. As to the appropriation of the moneys raised.

Article 7, section 8 of the constitution refers to moneys paid out of the state treasury, and has no application to a case like this.

This is more like the case of fees accruing to officers. (*See Hand* agt. *Ballou,* 3 *Kern.* 541).

11. As to the repealing clause.

Had it been wholly omitted, it would hardly have been contended that the constitutionality of the law was thereby affected, and its introduction certainly does no more. It provides substantially that the act of 1857, and all other acts, so far as they are inconsistent with the act of 1866, shall have no application to the new district created.

12. As to title.

(*a*) It accurately and strictly describes the territory included in the district. It is all within the metropolitan police district.

(*b*) There is no requirement of the constitution as to the degree of particularity to be used in this respect. (*Brewster* agt. *Syracuse,* 19 *N. Y.* 117 ; *Sun Mutual Ins. Co.* agt. *Mayor,* 4 *Seld.* 241.)

(*c*) It is not a local act (*Phillips* agt. *Mayor,* 1 *Hilton,* 483).

(*d*) It does not embrace more than one subject, and that is expressed in its title. Every provision in it is connected with its main subject. (*Connor* agt. *Mayor,* 1 *Seld.* 285, 297 ; *Thorp* agt. *Mayor,* 31 *Barb.* 572; *Sun Mutual Ins. Co.* agt. *Mayor,* 4 *Seld.* 240 ;' *People* agt. *Lawrence,* 36 *Barb.* 177 ; *Outwater* agt. *Mayor,* 18 *How.* 572 ; *Joyce* agt. *Mayor,* 20 *How.* 439.)

(*e*) Even if it embrace more than one subject, that does not render the whole law void. (*Fishkill* agt. *F. & B. Plankroad Co.* 22 *Barb.* 634; *People* agt. *Same,* 27 *Barb.* 445 ; *People* agt. *McCann,* 16 *N. Y.* 58 ; *People* agt. *Lawrence,* 36 *Barb.* 177, 184.)

13. As to preventing the giving away of property.

This is merely a provision against publicly giving away, obviously inserted to prevent evasion of the law, " striped pigs," and the like.

14. As to Sunday.

The provisions of the law are strictly constitutional, and moreover, are the same in substance as are contained in the act of 1857, the constitutionality of which has been affirmed

In the matter of James De Vaucene.

by the court of appeals. (21 *N. Y.* 173 ; *Lindenmuller* agt. *People*, 33 *Barb.* 548 ; *People* agt. *Hoym*, 20 *How.* 76.)

15. As to " geographical crimes," by which is meant making it a crime to do in the district created that which is not criminal out of it.

· The law of 1845 (*chap.* 300), and of 1846 (*chap.* 14), left it to the people in each town to decide whether the license system should apply to them, and no one ever contended that in this making " geographical crimes " it was unconstitutional. But as to this objection, *Williams* agt. *People* (24 *N. Y.* 405, 407), is conclusive.

16. Because it provides for expending a part of the moneys outside of the town and district in which it is raised.

If the objection is that a portion of the moneys raised goes to the inebriate asylum at Binghamton, is it unconstitutional that a business which tends to make drunkards should contribute to cure them, especially since, as there is a similar provision in the law of 1857, the rule is general throughout the whole state ?

If the objection is that moneys raised from the liquor dealers in the country towns in Queens county, where there is no metropolitan police force, goes to the support of that force, the reply is, that this is nowhere forbidden in the constitution, and that this may have been a mode adopted by the legislature to induce those towns to avail themselves of power given them to have the metropolitan police extended to them.

17. Because it confers judicial power.

The only power of this nature which is conferred is that of revoking licenses. It needs only a statement of the case to show the absurdity of this objection (*But see Sill* agt. *Village of Corning*, 15 *N.* Y. 297).

18. As to the jurisdiction of the inspector of excise.

He is (§ 2) to be in the metropolitan police district, and to be charged with such duties as the board " can and shall delegate to him." As they have no duties or powers in Westchester, they can delegate none to him there, hence his

power is, geographically speaking, only co-extensive with theirs.

19. Because the law provides for no license to give away liquor, and yet forbids it to be given away without a license.

As already shown, it only forbids the publicly giving away. A license is provided to " dispose of" liquors. Is not giving away, disposing of them?

20. Because it requires a man to close his place of business on Sunday and at certain hours, and it is said his place of business may be his house, to which he must have access.

No man is obliged to rent his house as a liquor shop, and if he chooses to do so, he subjects himself to all the inconveniences attached to that business.

Moreover, the law is to be construed reasonably, and not to mean that a man cannot have access to his residence. He must close it as a place of business.

After this minute examination of the objections, it is to be remarked, that even if those numbered 3, 4, 5, 6, 8, 9, 10, 11, 13, 14, 16, 17, 18, 19 and 20 are, one or all, held to be unconstitutional, such a conclusion in no manner affects the remainder of the law, and therefore in no way benefits the plaintiff.

In this connection it is to be observed, that most of the objections proceed upon an erroneous idea of the constitution of this state. It assumes that the legislative power is more limited than it is. The legislature has all the power not expressly withheld from it by the constitution, and any one objecting that a law or provision is unconstitutional, must, therefore, point out the clause that is infringed. (*Leggett* agt. *Hunter*, 19 *N. Y.* 456, *and cases cited*; *People* agt. *Morrell*, 21 *Barb.* 563; *Butler* agt. *Palmer*, 1 *Hill*, 324; *Bloodgood* agt. *M. & H. R. R. Co.* 18 *Wend.* 9; *Burch* agt. *Newbury*, 10 *N. Y.* 392; *Grant* agt. *Courter*, 24 *Barb.* 238.)

The provisions in the act of 1866 most strenuously objected to, are nearly all to be found in former excise laws.

Section 8 is substantially in the law of 1857. Section 11 in that of 1788. Section 12 in those of 1822 and 1857. Section 13 in that of 1857, and so on.

In the matter of James De Vaucene.

Even if those holding licenses under the act of 1857, had had valid contracts which the legislature could not impair, they could consent to surrender and waive them, and by seeking, accepting and paying for licenses under the law of 1866, they waived any rights under their former licenses. (*Embury* agt. *Connor*, 3 *Comst.* 518 ; *People* agt. *Murray*, 5 *Hill*, 488 ; *Baker* agt. *Brannan*, 6 *Hill*, 47.)

In the civil cases the following additional points were urged :

Even if the plaintiff has acquired a vested right under his old license, and had not waived it, the injunction cannot be sustained.

1. Because an injunction will not lie to interfere with the powers granted to the board of excise after they have exercised them. Their proceedings may, perhaps, be reviewed upon *certiorari*, but pending their exercise they cannot be interfered with by injunction. (*Leigh* agt. *Westervelt*, 2 *Duer*, p. 618 ; *Ex parte Persons*, 1 *Hill*, p 655.)

2. An injunction will not lie against the officers of the state, though the court may believe the law unconstitutional (*Thompson* agt. *Commissioners*, 2 *Abb.* 250).

3. Because no injunction lies, where there is a good remedy at law, and this is so since the union of law and equity in the same court. (*Mayor* agt. *Merserole*, 26 *Wend.* 132 ; *N. Y. Life Insurance Co.* agt. *Supervisors*, 4 *Duer*, 198 ; *Thompson* agt. *Commissioners*, 2 *Abb.* 250 ; *Chemical Bank* agt. *Mayor*, 1 *Abb.* 79 ; *Heywood* agt. *Buffalo*, 14 *N. Y.* 534 ; *Albany Northern Railroad* agt. *Brownell*, 24 *N. Y.* 348.)

(*a*) Plaintiff has a perfect remedy at law if arrested, and his views of the law are correct, he can plead them and be discharged (*Sterman* agt. *Kennedy*, 15 *Abb.* 204).

(*b*) It is not a case in which equity interferes to prevent a multiplicity of suits. (*West* agt. *Mayor*, 10 *Paige*, 539 ; *Jerome* agt. *Ross*, 7 *Johns. Ch.* 336 ; *Bouton* agt. *City*, 15 *Barb.* 392).

(*c*) Nor is it a case of irreparable injury ; and even if it was, it must be an irreparable injury to the freehold which justifies the interference of equity. (*Gilbert* agt. *Mickle*, 4

*Sand. Ch.* 357 ; *Heywood* agt. *City of Buffalo,* 14 *N. Y.* 534 ; *Jerome* agt. *Ross,* 7 *Johns. Ch.* 331 ; *Mutual Benevolent Life Insurance Co.* agt. *Supervisors,* 33 *Barb.* 22 ; *Thompson* agt. *Matthews,* 2 *Edw.* 212.)

*(d)* If the defendants arrest the plaintiff, close his place, or do any other similar act without authority of law, it will be a mere trespass, and an injunction does not lie to prevent that. *(Mayor* agt. *Connover,* 5 *Abb.* 171 ; *Jerome* agt. *Ross,* 7 *Johns. Ch.* 331 ; *Bouton* agt. *City,* 15 *Barb.* 392, 394 ; *Van Rensselaer* agt. *Griswold,* 3 *N. Y. Leg. Obs.* 94.)

4. The plaintiff is seeking not a right, but is appealing to the equitable consideration and powers of the court. He should, therefore, come with clean hands. But it appears that since the injunction was granted, he has openly and flagrantly violated the laws of the state, laws which were as binding upon him under the act of 1857 as under that of 1866. He has used the process of the court to protect him in violating laws which this court with others is bound to enforce. The court should not longer stay the arm of the criminal law.

Lott, J. It appears by the return to the habeas corpus in the matter, that De Vaucene is in custody on a complaint on oath made to a police justice, of the city of Brooklyn, alleging that he, the said De Vaucene, did on the 10th day of July, 1866, at the city of Brooklyn, unlawfully sell and dispose of a quantity of strong and spirituous liquors, to wit : a glass of applejack whiskey, contrary to the provisions of the third and eighth sections of an act entitled an act to regulate the sale of intoxicating liquors within the metropolitan police district of the state of New York, passed April 14, 1866.

None of the facts alleged in the return are denied, and it becomes necessary for the proper understanding and consideration of its effect to refer to some of the provisions of the act mentioned in the complaint. The first section of it constitutes and creates the persons who are and from time to time shall be commissioners of the metropolitan board of health, a board of excise in and for the metropolitan police

In the matter of James De Vaucene.

district, excepting and excluding the county of Westchester, and declares that from and after the passage of this act they alone shall possess the powers and perform the duties of commissioners of excise within said metropolitan police district, except in said county of Westchester.

The third section then declares that from and after the 1st day of May, 1866, no person or persons shall within the said metropolitan police district, exclusive of the county of Westchester, publicly keep or sell, give away or dispose of any strong or spirituous liquors, wines, ale or beer, in quantities

---

## NEW YORK COMMON PLEAS.

GEORGE W. HALL, *plaintiff*, agt. JACKSON S. SCHULTZ, WILLIARD PARKER, JOHN O. STONE, JAMES CRANE, JOHN SWINBURNE, THOMAS C. ACTON, JOHN G. BERGEN, BENJAMIN F. MANIERRE and JOSEPH S. BOSWORTH, commissioners of the metropolitan board of health, as such claiming to constitute a board of excise, in and for the metropolitan police district of the state of New York, excepting and excluding the county of Westchester. The (alleged) board of excise, in and for the metropolitan police district of the state of New York, excepting and excluding the county of Westchester, THOMAS C. ACTON, JOSEPH S. BOSWORTH, JOHN G. BERGEN and BENJAMIN F. MANIERRE, commissioners of the metropolitan police, of the metropolitan police district of the state of New York, "the board of metropolitan police of the metropolitan police district of the state of New York," JOHN A. KENNEDY and NATHANIEL R. MILLS, *defendants*.

JOHN GRAHAM, *for plaintiff*.
CHARLES TRACY, GEORGE BLISS, JR., *and* A. J. VANDERPOEL, *for defendants*.

---

## NEW YORK COMMON PLEAS.

PAUL FALK agt. SAME, and JAMES G. BOGART, instead of NATHANIEL R. MILLS.

HENRY L. CLINTON, *and* STALLKNECHT *and* HALL, *for plaintiff*.
CHARLES TRACY, GEORGE BLISS, JR., *and* A. J. VANDERPOEL, *for defendants*.

The complaints in these cases alledged that the defendants were the board of excise, in and for the metropolitan police district of the state of New York, and part of them were also the board of police; that the plaintiffs had respectively licenses granted under the law of April 16, 1857, for which they paid thirty dollars each, and which would not expire till July 5th, 1866; that the defendants were proceeding to enforce the act of April 14, 1866, on a pretence that it superseded the former law and all licenses granted under it, while the complaint alleged that the act was itself unconstitutional and void. The plaintiffs further alleged that the act of 1866, imposed restrictions upon the sale of liquors which were not imposed by that of 1857, and that they took and paid for their licenses under the latter act, relying upon having all the privileges that it granted for the entire period of the licenses, and had, in reliance upon that, purchased a large quantity of liquors and incurred heavy expenses; that a large portion of their business

In the matter of James De Vaucene.

of less than five gallons at a time, unless as he or they may be licensed pursuant to the provisions of this act, and may be permitted by it; and the fourth provides that the said board of excise shall be subject to further provisions hereof; have power to grant licenses to any person or persons of good moral character, and who shall be approved by them, permitting him and them for one year, from the time the same shall be granted, to sell and dispose of at any one named place within the said metropolitan police district, exclusive of the county of Westchester, strong and spirituous liquors, wine, ale and

and profits arose from sales made at hours and days when the law of 1866, forbade sales to be made. Hall claimed no right to sell on Sundays, but Falk did. Falk claimed also that lager beer was not included under the provisions of the law of 1866. Both alleged that they should be exposed to numerous suits and arrests, and would suffer irreparable injury, if the defendants were not enjoined from enforcing the law of 1866.

The plaintiffs had applied for, received and paid for licenses under the law of 1866, but alleged that they had done it under compulsion.

The defendants maintained the constitutionality of the act of 1866, and denied that the plaintiffs would suffer any irreparable injury if that law was enforced. In Falk's case they also showed by affidavits, that pending the injunction he was keeping his place open, and selling liquors on Sunday to all comers, which they claimed was a violation both of the act of 1866 and of 1857. The defendants also denied that there was any compulsion used to induce the plaintiffs to apply for licenses under the law of 1866.

---

NEW YORK COMMON PLEAS.

JEREMIAH DRISCOLL agt. SAME, and THORNE, captain of police, instead of JAMES G. BOGART.

JOHN MCKEON and FRED. SMYTH, *for plaintiff*.
CHARLES TRACY, GEORGE BLISS, JR., and A. J. VANDERPOEL, *for defendants*.

The facts in this case are briefly these:

The plaintiff is engaged in selling spirituous liquors in small quantities to be drank on the premises. He does not keep an inn, tavern or hotel. He has no license from any source. The defendants, with the exception of Kennedy and Cameron, are the board of excise, created under the law of April 14, 1866. The defendants, Acton, Bosworth, Manierre and Bergen, are the board of police. The defendants, Kennedy and Cameron, are officers under the control of the board of police, and in no manner subject to the orders of the board of excise.

The plaintiff alleges that the act of April 14, 1866, is unconstitutional and void; that the several defendants have combined to execute it, and will, by repeated arrests, and by closing his place of business, inflict upon him irreparable injury. To prevent this he asks the equitable interference of this court by way of injunction.

In the matter of James De Vaucene.

beer, in quantities not less than five gallons at a time, upon receiving a license, fees to be fixed in their discretion, and which shall not be less than $30 nor more than $250.

The eighth section prohibits the sale by persons having such licenses on Sundays, and also on any day upon which a general or special election or town meeting shall be held, within one quarter of a mile from the place where the same shall be held.

The sixteenth section declares that every person who shall violate any of the previous provisions of the said act, shall for such offense be guilty of a misdemeanor, and on conviction thereof, shall be punished by a fine of not less than $30 nor more than $100, or with imprisonment for not less than ten days nor more than thirty days, or by both such fine and

The defendants deny all the plaintiff's allegations as to irreparable injury; they show that they have not seized and taken possession of the plaintiff's place of business, but that on the contrary, the defendant, Kennedy, the executive officer of the police, has especially forbidden this to be done.

The defendants, other than the board of police, Kennedy and Cameron, deny that they have anything to do with arresting the plaintiff or any one, or with enforcing the act of April 14, 1866, in any way. They deny all confederation with the other defendants.

The allegations of unconstitutionality, deprivation of rights and property, &c., &c., are all denied by all the defendants.

In the *Driscoll case* the following additional point was also urged by the defendants' counsel :

1. The plaintiff has no standing in court to ask its equitable interference. Even if his position is correct, that the law of April 14, 1866, is unconstitutional and void, the law of 1857 remains in full force, and the plaintiff is in constant and flagrant violation of that act. Yet he asks this court to protect him in carrying on that identical business. In other words, this court is asked, because one law is alleged to be unconstitutional, to protect the plaintiff in violating another act, the constitutionality of which has been affirmed by the court of appeals. (*Commissioners of Excise of Tompkins Co.* agt. *Taylor*, 21 *N. Y.* 173 ; *Laws of* 1857, *vol. 2, pages* 410, 411, §§ 13, 14; 1 *R. S.* 676, §§ 71, 72, *part I., ch.* 20, *tit.* 8, *art.* 8; *Laws of* 1860, *page* 448, § 42).

These laws it is the duty of the police to enforce, and the plaintiff seeks to forbid them by injunction. (*Laws of* 1860, *pages* 444, 445, §§ 29, 30.)

It is contrary to law and to equity for the court to grant him an injunction or to entertain his suit. (*Griffith* agt. *Wells*, 3 *Denio*, 226 ; *Bank of U. S.* agt. *Owen*, 2 *Pet.* 527, 539 ; *Seneca Co. Bank* agt. *Lamb*, 26 *Barb.* 595 ; *Thalmier* agt. *Brinkerhoff*, 20 *Johns.* 386, 397 ; *Pennington* agt. *Townsend*, 7 *Wend.* 276, 280; *Scott* agt. *Burton*, 2 *Ashmead*, 312 ; *Biddle* agt. *Ash, Id.* 211 ; *Morse* agt. *Machias*, 42 *Maine* 119).

In the matter of James De Vaucene.

imprisonment, and in addition thereto, shall be liable to a penalty of $50 for each offense, recoverable in a civil action in the name of said board of excise; and the twentieth section makes it the duty of every magistrate to entertain complaints for a violation of the provisions of this act made by any person under oath. The twenty-third section provides what disposition shall be made of the license fees and penalties, expressly declaring that nothing contained in the act shall divert from the state inebriate asylum such proportion of license fees as is now set apart for said institution by existing laws.

The act also contains several provisions prescribing the

---

HOLT agt. COMMISSIONERS of EXCISE, etc.

CARDOZO, J. Immediately on the submission of this case, being convinced that very little, if anything, could be added to the argument of the distinguished counsel for the plaintiff, and being informed by the learned counsel for the defendants, that he should not in the case of Falk against the same parties argue further any of the points which had been discussed in this case, and I must add that his argument already made had exhausted the subject—and the case being one of great public interest and importance, I commenced the examination of the matter, putting aside all other engagements, and devoting myself to it night and day, except when actually occupied in court, but intending nevertheless, to withhold my opinion until the Falk case had been finally submitted to me. But the proceedings before the several magistrates yesterday seem to demand that there should be no further delay, and that I should make known the results of my investigations, and I therefore proceed to express my views as follows :

*George W. Holt* agt. *Jackson S. Schultz, et al.*—On the 14th of April, 1866, the legislature of this state passed a law (*Chap.* 578 *of the Laws of* 1866), entitled "an act to regulate the sale of intoxicating liquors within the metropolitan police district of the state of New York," by the third section of which it is provided that "from and after the first day of May, 1866, no person or persons shall within the said metropolitan police district, exclusive of the county of Westchester, publicly keep, or sell, give away or dispose of any strong or spirituous liquors, wines, ale or beer, in quantities less than five gallons at a time, unless as he or they may be licensed, pursuant to the provisions of this act, and may be permitted by it."

The act creates a board of excise—points out who may be licensed, how application for licenses shall be made, and the duties of those who may become licensed; and compliance with its requirements is enforced by very stringent provisions. By the 16th section, it is declared that every person who shall violate "any of the foregoing provisions of this act"—to some of which I have referred—shall for each offense be guilty of a misdemeanor, and on conviction shall be punished by fine or imprisonment, or both. The act contains many other sections, the constitutionality of some of which is disputed, but in the view I take of the case, no specific mention need be made of them.

Prior to the passage of this law, the plaintiff in this case, under the act of the legislature of April 16th, 1857, (*chap.* 628, *p.* 405), and in conformity with its pro-

In the matter of James De Vaucene.

duty and regulating the conduct of the persons who may receive licenses under the said act, and in reference to the sale and other disposition of strong and spirituous liquors, wines, ale or beer, and imposes upon sheriffs, constables or officers of the police the duty of enforcing the said act, and confers upon them certain powers for the execution of that duty which, in the view I have taken of the case, it is necessary to refer to in detail, and concludes by declaring that all acts and parts of acts inconsistent with the provisions of the said act are thereby repealed, so far as the same shall apply to the said metropolitan police district, except the county of Westchester, and that the said act shall take effect immediately.

---

visions, procured from the then board of commissioners of excise for the city and county of New York, a license as ah inn keeper "to sell strong and spirituous liquors and wines, to be drank in his house and on his premises," from the 7th day of June, 1865, until that license should "expire by operation of law, or be revoked for a violation of the provisions of the aforesaid act." By the 4th section of that act, all licenses "when issued shall be in force, unless revoked, until ten days after the third Tuesday in May next succeeding the granting of such license, and in the city of New York until fifty days thereafter." By the 26th section, which alone confers the right of revocation, the court of sessions is authorized in certain cases, and upon notice to the party interested, "to inquire into the circumstances and to revoke" a license granted to a person violating the provisions of the act. No right of revocation, except for cause, and to be exercised in the manner I have mentioned, is reserved by the act.

To procure a license under that law the plaintiff paid the sum of thirty dollars, the amount required of him by the then board of commissioners—fixed by them under and pursuant to the authority conferred by the second section of the statute. More than two months of the period specified in the license remained unexpired on the first day of May last, and no provision for compensation to the plaintiff for the loss of the unexpired term of that license is made by the act of 1866 ; nor is there any clause in it saving the rights of persons whose licenses had not then expired. Under these circumstances the plaintiff has filed his complaint, setting forth substantially the matters I have mentioned, and charging, among other things, that upon the faith of the license under the act of 1857, he had bought a large stock of wines and liquors, a considerable portion of which yet remains upon his premises and unsold ; that he wishes and intends to exercise the powers and rights which he claims are secured to him by his first license, and to prosecute his business, notwithstanding the act of 1866, and he insists that if the defendants, or any of them, who are charged with the execution of the last mentioned statute, should cause him to be arrested, as they may do, for each violation of its provisions, which will be very numerous, he will sustain great and irreparable injury. A temporary injunction restraining any interference with the plaintiff or his business, upon the part of he defendants, by virtue or in pursuance of the act of 1866, was granted by me and argument has been made by dis-

It appears to have been passed on the 14th day of April, 1866, and had, if valid, taken effect when the act complained of was committed. I have already stated that none of the allegations in the return were denied, and I here add that it was admitted by the counsel of De Vaucene on the argument, that at the time of the sale mentioned in the complaint made against him, he had no license from any excise board whatever authorizing him to make such sale, but he claimed and insisted that the act referred to therein, was unconstitutional and wholly void, and that consequently such sale did not constitute an offense for which he could be taken or detained in custody.

tinguished counsel upon both sides, upon a motion to continue it until final judgment in the action.

With the question, whether the act of 1866 be wise or impolitic—whether it be calculated to advance or to retard and prejudice the cause of temperance, I have, in my judicial capicity, nothing to do. To all arguments on those matters, and similar considerations, I have only to apply the spirit of the remarks which I made on another occasion, when it was argued that only a certain view of a legal proposition " would satisfy the public." I said then, and I say now, "the question is not what will satisfy the public, but what does the law demand? With that everybody must and will be satisfied—for that is the law, and ours is a law-abiding community."

Considerations of policy must be addressed to the legislature, not to those who are charged with the duty of expounding its enactments. I am sacredly abligated impartially to ascertain the law according to my best judgment, and when I have thus arrived at a conclusion I am similarly bound to declare it, whatever it or its consequences may be.

Three principal questions arise in this case.

*First.* Whether the plaintiff has such an interest as entitles him to a standing in court.

*Second.* If he has, whether the remedy by injunction is appropriate; and lastly, and most important, whether the act of 1866 is unconstitutional.

The defendants object that the plaintiff, by applying for and accepting a license under the present act, has surrendered any rights he might have had under his previous license, and that therefore, he cannot maintain this action; and of course, if it be true that he must ultimately be defeated in the suit, the preliminary injunction should be dissolved. But I cannot concur with the learned counsel for the defendants that any such surrender has been shown. It is not suggested that any formal release was executed by the plaintiff, nor that the license was ever delivered up to the defendants; but I am asked to infer its surrender from the mere fact of applying for a license under the statute in question. This I think unwarrantable. The plaintiff's application under the new statute was not incompatible with an intention to assert the validity of his old license. It was a precautionary act. If his old license were constitutionally destroyed by the recent legislation, he needed a new one. If the new statute were void, he could not give it vitality. He would get nothing by a grant under a void law, but he lost

In the matter of James De Vaucene.

I will briefly examine such objections against the validity of the act as appears to be applicable to the case before me.

*First.* It is said that this act is in violation of section 16, article 3 of the constitution of this state, which provides that no private or local bill which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title. The objection assumes that the act in question is of the character referred to in that section. This assumpton is not warranted or authorized by the provisions of the act. It is in no sense a private one. Nor is it, in my opinion, local within the meaning of the constitution. It is true that it applies in its practical operation to a

nothing by taking that which was worthless. Besides, in one sense, the application for the new license was, as the complaint charges, compulsory, because if the act were constitutional, which every law presumptively is, the plaintiff had no alternative but to apply for a license, if he did not wish to sacrifice the property which he had purchased on the faith of his license under the act of 1857—if he did not mean to be totally deprived of the right to continue the business he had established. He could not be required to determine the grave question of the constitutionality of the statute ; and the fact that he placed himself in a position to take its benefits, if it should be upheld, is no reason to presume, in the absence of any other evidence, that he surrendered, or meant to surrender, his previously acquired rights, or to deny to him the privilege of impugning in the courts, the constitutionality of the statute. The defendants cannot be heard to say that the plaintiff had the alternative to take a license from them or not, as he pleased, and that therefore his doing so was voluntary, while at the same time they assert, that if he did not take one, he would have no right to sell liquor at all, and must lose both his stock in trade and the business he had established. A license thus taken is taken by compulsion, even though it be true that the defendants did not so much as invite the plaintiff to make the application ; and if taken coercively, there is no pretense for inferring a surrender of previously acquired interests.

I am, therefore, of opinion that the first objection raised by the defendants is untenable and must be overruled ; and that the plaintiff, if the license granted to him under the act of 1857 conferred a vested right, which will necessarily be involved in the third question which I have stated, has such an interest as will enable him to come into court and ask its judgment in the premises.

This brings me to the next inquiry, which is whether, under the circumstances of the case, the remedy by injunction will be proper, if the act in question be found to be unconstitutional.

Upon this point it seems to be scarcely necessary to do more than refer to the case of *Wood* agt. *The City of Brooklyn* (14 *Barb. S. C. R.* 425).

"Disreputable imprisonment" to which the plaintiff would be sub'cct, is distinctly put by Judge Strong as a sufficient reason for granting an injunction. I do not mean to be understood that in my judgment this case presents no other reason for equitable interference, but it seems to me to be enough to place it upon the same ground which was approved by that eminent and accurate jurist.

limited district of the state, but it relates to a subject affect-
ing the general welfare and interest of the whole state, and
not of that district only. At the time of its passage the
excise act of 1857 (*chapter* 628 *of Laws*, 1857), entitled "an
act to suppress intemperance and to regulate the sale of
intoxicating liquors," which was applicable to the whole
state, was in full force, and it is apparent from the provis-
ions of the act in question, that its general scope and object
were to alter the general law in reference to the board of
excise, and to the other matters in which they are inconsist-
ent. The effect of the change is to regulate a subject of
vital interest and importance to the whole community by

Still it may be well to cite a few passages from Judge STORY's work on equity
jurisprudence, which appear to be directly in point in this case. It should be
remembered that this action seeks to protect property. Its object is to prevent
irreparable damage to the business of the plaintiff, which, notwithstanding the
opposing affidavit, the court must see, will follow, if he be interfered with as pro-
vided by the act in question. Such an interference amounts to a nuisance, which,
it is well settled, will be restrained when private individuals suffer an injury dis-
tinct from that of the public in general.

In section 926 of his work on equity jurisprudence, Judge STORY says : "Where
the injury is irreparable, as w" ere loss of health, loss of trade, destruction of the
means of subsistence, or permanent ruin to property, may or will ensue from the
the wrongful act or erection—in every such case courts of equity will interfere by
injunction in furtherance of justice and the violated rights of the party." Again
in section 928 : "It is upon similar grounds that courts of equity interfere in
cases of tresspasses, that is to say, to prevent irreparable mischiefs, or to suppress
multiplicity of suits and oppressive litigation." Enough I think has been quoted
to show that there can be no doubt of the right to grant an injunction to protect
the property of the plaintiff. The learned counsel for the defendants erred in
supposing that the cases cited by him are authorities against this view, or sup-
port his position that injunction should not be allowed, even if the statute be con-
ceded to be unconstitutional. On the contrary, many of them, as well as the case
of *Wood* agt. *Draper* (4 *Abb. P. R.*), decided by the present chief judge of the
court of appeals, not cited by the counsel, admit that the remedy by injunction is
a proper one, and only put the refusal to allow it upon some ground or defect of
parties plaintiff, or want of proper allegations in the complaint. Thus, in *Wood*
agt. *Draper*, (*supra*) when the right to grant an injunction was asserted and
established, it was refused in that case, because it was held that the plaintiff,
suing simply as a tax-payer, and having no interest in the subject matter, except
that which was common to all the tax-payers of the city, could not maintain an
action in his individual name, without an averment that the suit was brought on
his own behalf, and "also on behalf of all others having a like interest." Again,
in *Thompson* agt. *The Commissioners of the Canal Fund*, which was also a suit by
a taxpayer, Mr. Justice MITCHELL said that relief by injunction was never granted
merely to prevent an officer from carrying out a law of the state because it was
deemed unconstitutional, unless some equity was at the foundation of the bill—

In the matter of *James De Vaucene.*

two acts instead of one, and it is substantially the same in its operation as a single law would be, which declared that the sale of ardent and spirituous liquors in one portion of the state should be regulated in one way by certain regulations, and in the residue in another way by different regulations.

If, however, it be conceded that the act is a local one, it is nevertheless valid. It does not embrace more than one subject, which is the regulation of the use of ardent and spirituous liquors, wines, ale or beer, mentioned in the act, within the metropolitan police district and exclusive of Westchester; its different provisions all tend to that end, and the title

which is precisely the case here. Each of the other cases cited by the counsel will be found, upon a careful examination, to be either foreign to the present question or else to be an authority, though the remedy may have been refused in that particular instance, for asserting the propriety of allowing it whenever, as here, a fit case for it be made.

The second objection taken by the defendants' counsel, cannot, therefore, be sustained.

Is the act of 1866 unconstitutional?

Is it repugnant either to the prohibition in the federal constitution, the supreme law of the nation, which prevents any state from passing any law impairing the obligation of a contract (*art.* 1, § 10, *subdivision* 1), or does it contravene the fundamental law of our own state, which declares that "no person shall be deprived of life, liberty or property, without due process of law?" (*Art.* 1, § 6.)

I think it is opposed to both. I shall not stop to examine whether the act under review annuls the unexpired licenses issued under the statute of 1857. The learned counsel upon both sides concede and assert that it does, and therefore, I feel at liberty to assume it as indisputable. Nor is there any doubt that if the third section of the statute be void as to any class of citizens, that it is void as to all; because it is manifest that the act did not mean to, and does not create different classes, upon some of whom it should operate, and upon some of whom it should not. Nor is there any room to dispute that if that section is invalid, as it is such an important part, and indeed, the life and being of the whole scheme of the act, without which all the other provisions would be futile, the whole statute must share its fate and be declared unconstitutional. That these views respecting such an act as the one under consideration are sound, is conclusively established by *Wynehamer's case*, (13 *N. Y. Rep.* 378).

The sole question, then is, did the licenses granted under the act of 1857 create such a contract or vest such rights as cannot constitutionally be impaired or revoked. I do not doubt that the legislature, under its inalienable right, might, notwithstanding those licenses, have passed laws which should regulate the sale of liquor under them, but I have no hesitation in saying that, under pretense of regulation, a law cannot be sustained which, like the present, has the effect to render a previous grant void. This is not regulation, it is destruction.

I shall not review or express my views of the decisions of courts of other states which were cited by the defendants' counsel, and which he argued established,

sufficiently expresses that subject. Although it refers to the whole of the metropolitan district, and does not except the county of Westchester, that omission is no objection. The district does, in fact, include all the territory to which the act especially relates, and the title also declares in general terms that the act regulates the sale of intoxicating liquors. This is sufficient; an abstract of all its provisions is not necessary. (*See The Sun Mutual Insurance Company* agt. *The Mayor, &c. of New York*, 4 *Selden, p.* 242; *and Brewster* agt. *The City of Syracuse*, 19 *N. Y. Rep. p.* 117, *&c.; see also The People* agt. *The Supervisors of Orange*, 17 *N. Y. Rep. p.* 235.) It has been decided that if any subject is

that such licenses as those in question conferred no vested right, but were revocable at pleasure: because, however learned the courts pronouncing them have been, and even if they go to the full extent which the counsel for the defendants contended they did, I cannot receive them as authority in this state, where I understand our courts to have clearly and plainly decided principles with which they are utterly inconsistent. Nor will it be necessary to consider and apply the numerous citations from the elementary books and the decisions of the courts of the United States, which were urged upon me by the learned counsel for the plaintiff—many of which bear pointedly upon the question involved—because that the license was *property*, and could not thus be annihilated, can be demonstrated from the cases decided by our own courts.

Before proceeding further, I ought to remark that the right of revocation is only claimed by the defendants' counsel on the ground that the constitutional prohibition has "no application to the exercise of police powers," which he asserts the revocation of the license to be. It is not pretended that the plaintiff has been deprived of his property by "due process of law," unless this law can be upheld upon the principle mentioned, and therefore the sphere of examination necessary to the determination of the case, is very greatly restricted. It will only be material, then, to inquire whether the license was a contract within the provisions of the federal constitution, or property within that of the constitution of our state; and the cases which I now cite are referred to simply to establish the proposition that a license is such a contract, and that rights acquired under it become "vested rights."

In the case of *Wood* agt. *The City of Brooklyn*, before cited, Justice STRONG, speaking of a license to sell liquor which had been granted to the plaintiff in that suit, under the state law, says: "For this the law required him to pay, and he no doubt has paid a compensation to the city, and he has a vested right to the privileges which it confers so long as it remains in force. But by the decision of the court of appeals in the case of *The Mayor* agt. *The Second Avenue R. R. Co.* (32 *N. Y. Rep. p.* 261), reviewing and affirming the decision of the general term of the supreme court in this district, this point has, in my judgment, been passed upon and settled, and settled so as, so far as I am concerned, to be conclusively adjudicated, unless and until the court of last resort shall see fit to reconsider its opinion. In that case it appeared that the common council of the city of New York had authorized the construction of a railroad track in certain streets of the

embraced in the act which is not expressed in its title, that does not render the act void; it is still valid as to the subject that is expressed therein. (*The Town of Fishkill* agt. *The Fishkill and Beekmantown Plankroad Company*, 22 *Barb. Rep.* 634; *The People* agt. *The Same*, 27 *Id. p.* 445, &c.; *The People* agt. *McCann*, 16 *N. Y. Rep. p.* 58, &c.; *Williams* agt. *The People*, 24 *Id. p.* 405, &c.; *The People* agt. *Lawrence*, 36 *Barb. p.* 184, &c.)

*Second.* It is claimed that the third section of the act divests the owner of his property without due compensation. Such is not the effect of its provisions. So far as relates to the sale of liquors specified therein, it is substantially the

city, and the running of cars upon it. The resolution authorizing the grant required, that before the permission should take effect, the grantees should enter into an agreement with the mayor, etc., "to abide by and perform the stipulations and .provisions therein contained, and also all such other regulations or ordinances, as may be passed by the common council relating to said railroad." The suit was brought to recover penalties for running the cars without paying the annual license fee which an ordinance subsequently passed, require should be paid for every passenger railroad car. Opinions that the license fee could not be exacted, were delivered by Justices CLERKE and SUTHERLAND, of the supreme court. (*See* 21 *How.* 257.) The opinion of Judge SUTHERLAND is so clear and explicit, and contains language so much more apposite to the present case than I could select, that I shall quote several of its passages. He starts by saying: "I look upon the questions raised by the demurrer in this case as a question of property, of vested rights, resting on or secured by grant or contract." So in the present case, the license is property—a vested right—and as Judge SUTHERLAND said in that case, citing *Dartmouth College* agt. *Woodward* (11 *Wheat.* 511), "It as much within the protection of the constitution as any other property or right resting on or derived from contract."

Again, the judge says: "No doubt the city corporation has power to impose a a license fee for the use of public carriages, but he concludes, that "after having licensed a public carriage for a certain fee, for a certain term, or for a certain term without the payment of any fee, it has no right during the term to impose the condition of the payment of an additional license fee in the former case, or of any fee in the latter. A similar question was presented in the case of the mayor, etc., against the Third Avenue Railroad Company in the court of appeals, and a like disposition was made of it, opinions being declared by Judges PARKER and CAMPBELL. That case was decided in September term, 1865. Now it is manifest that those declarations could only have been made on the theory that the license, or permission, or resolution, whatever it was termed, was a contract which could not be impaired. Other cases might be cited. Does the present differ in principle from those cases? Not at all. Did not the state, then, make a contract with the plaintiff?

The legislature created commissioners of excise—it authorized them to grant licenses for certain periods upon payment of certain sums of money; and in pursuance of that authority, the state, through its thus created agents, for a valu-

same as the old excise law, and is merely a regulation of
such sale, and it is entirely different from the prohibitory
law entitled "an act for the prevention of intemperance,
pauperism and crime," which was declared to be unconsti-
tutional in the cases of *Wynehamer* agt. *The People* and *The
People* agt. *Toynbee* (3 *Kernan, p.* 378, &c). It must be
deemed as a settled law that it is competent for the legisla-
ture to regulate the sale and disposition of spirituous liquors.
That principle was fully recognized by the court of appeals
in the two cases last cited, and cannot now be questioned.

*Third.* It is insisted that certain provisions of the law
regulating the conduct of persons having licenses, and giv-

able consideration, conferred upon the plaintiff the right to sell liquor for a defi-
nite period.

Is it possible to conceive of any reason why that should be less binding than a
deed of land, executed by the proper officers of the state, would be ? or why the
legislature should or could have the power to annul the one and not the other ?
Whether you call it a grant, a contract or a license, is immaterial. The faith of
the state, for a valuable consideration, was pledged to the plaintiff, that he might
carry on a certain business for a fixed time, and he can no more be deprived of
that right than he could be of land which the state might have granted
to him in fee. The constitution of the country prevents it, and common
honesty forbids it. The use of it, as well as of land granted by the state,
might be regulated; but under pretense of regulation, all use of either
species of property could not be prevented. But all use of the plaintiff's license
is prevented. The license itself is annulled. There is nothing inconsistent with
these views in any of the cases in our own state relied upon by the defendants.
They were all cases where the grant remained unrevoked, the use only being
regulated. As, for instance, in the oft-cited case of *The Brick Church* agt. *The
Mayor* 5 (*Cowen,* 538), where the city prohibited premises it had conveyed to the
plaintiffs from being used any longer as a cemetery. That was a legitimate exer-
cise of police power. But it is very different here. The plaintiff, under the law
purporting to regulate the sale of liquor, has, without compensation, been abso-
lutely deprived of property for which he paid the state a valuable consideration.

The injustice of any other principle than that which I have thus maintained
will become yet more palpable, when it is remembered that if the legislature
could destroy the unexpired term of the plaintiff's license when it had but sixty
days to run, it might equally do so one day after it was granted, and without
returning a dollar of the consideration which he had paid. And if the legislature
may thus to-day deprive the plaintiff of one species of property, it may to-morrow
in similar manner deprive other citizens of another species. There would be no
limit to its destructive power. A doctrine which might lead to results, or support
conduct so unfair and so dangerous to all our citizens, should not be sustained,
unless upon the most explicit adjudications of courts whose authority is binding
and conclusive.

Upon the grounds which I have thus stated, without elaborating them further,
or assigning other reasons which also convince my mind of its invalidity, I feel

ing the power of arrest to public officers, and to close and keep closed. any place in which there shall have been any violation of the act, are unconstitutional, and that the entire act is therefore void. I do not deem it necessary or proper to consider or express any opinion on these questions. Those provisions are distinct and have no necessary connection with that under which the question is raised by the return in this case. It is well settled that a law invalid in some of its provisions may, nevertheless, be valid, and enforced as to the residue. The rule on that question is well stated by Judge SELDEN in the case of *The People* agt. *Toynbee* (3 *Kernan, p.* 441). He there says : " The general rule on this

---

constrained to declare the act of April 14th, 1866, unconstitutional and wholly void ; and therefore the motion to continue the injunction must be granted.

---

JEREMIAH DRISCOLL agt. JACKSON S. SCHULTZ and others.

CARDOZO, J. I do not intend, at present, to add anything to the reasons which I assigned in the *Holt case* to establish the invalidity of the act of April 14, 1866. That question was rightly decided on the argument, and must be regarded as *res adjudicata* until it is presented to the general term ; and then it will not be difficult to show that the little in the shape of *legal* argument, which, however, irregularly and improperly, has been attempted to be advanced against it, is unsound and fallacious, alike in law and morals. That decision effectually disposes of the present case, for the following reasons : The complaint here charges that the defendants, under pretence of an alleged statute which in legal effect has been declared to have no existence, are interfering with the business of the plaintiffs ; and the affidavits read in opposition to the motion show this to be the fact. It is not claimed that aught appears upon the face of the complaint to show, as the defendants assert, that there is anything unlawful in the plaintiffs' occupation ; and the defendants acting under a pretended statute, which has been pronounced unconstitutional and void, are mere trespassers, and cannot be heard to question the legitimacy of the plaintiff's business, or his right to carry it on. The doctrine is too familiar to every lawyer to require the citation of an authority. The motion to continue the injunction must be granted, with $10 costs. If the phraseology of the injunction should need amendment, so as to make its effect—which by practical construction has been shown not to have been misunderstood—more clear and explicit, of course that may be allowed.

subject is, that where a part of a law is in conflict with the constitution, and that part is entirely separable from the residue, so that the other portion of the law can be enforced without any reference to it, there the unconstitutional part only will be condemned; and it was said by the court in *Commonwealth* agt. *Ketchings* (5 *Gray's Report. p.* 486), that " the constitutional and the unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution in sections is purely artificial, but whether they are essentially inseparable and

---

### NEW YORK GENERAL SESSIONS.

THE PEOPLE OF THE STATE OF NEW YORK agt. GEORGE KRUSHAW and six other persons, indicted for violations of law of April 14, 1866, commonly known as the "Excise Law."

DEMURRER to indictments.

A. 'OAKEY HALL, *District Attorney*,
CHARLES TRACY and GEORGE BLISS, JR., *for People*.
JAMES T. BRADY, *for prisoners*.

HACKETT, Recorder. *The People, &c.* agt. *George Krushaw and six others indicted under various provisions of the excise act of* 1866 : In these various cases demurrers have been interposed, upon the ground that the conceded facts constitute no cause for criminal action, and that the law under which the indictments were framed and found is unconstitutional. The indictments charge four generic offenses, which are distributed as follows : A count for selling liquors without holding the excise license of 1866 ; another count for giving away liquor ; again for keeping and disposing of the same publicly ; for similar acts especially committed upon a Sunday ; for neglect to keep liquor shops " completely and effectually closed" on Sunday ; and still another count for such neglect between midnight and sunrise of each intervening day and night. In these various indictments it is charged that the acts complained of were each and all committed unlawfully and maliciously ; the ordinary statutery words do not appear, such as giving away liquors with intent to evade sale ; publicly keeping liquors with intent to sell the same, or disposing of the same with intent to evade the law. In an act so novel in its features, the attorney for the people has, perhaps properly, in pleading, followed the language of the act in question, charging the offenses created by it. The excise law under consideration makes each and every act charged and counted upon a misdemeanor, and upon conviction the offender to be punished by imprisonment in the penitentiary. It further punishes by pecuniary penalties, and instigates dilligence to the suppression of violators of the law, by an award of premiums to the informers of such violations. It becomes a misdemeanor to, *first*, sell liquor ; *second*, to give it away ; *third*, to publicly keep it ; *fourth*, to dispose of it, without the seller, giver away, keeper or disposor, holding the especial license of the act of

In the matter of James De Vaucene.

connected in substance. The only question raised by the return is, whether the sale by De Vaucene of ardent and spirituous liquors mentioned therein without a license granted by the commissioners of the metropolitan board of health, subjected him to arrest and imprisonment upon the complaint made on oath against him. Such sale is in express terms prohibited by the act, and is declared to be an offense punishable by fine or imprisonment, or both. The act constitutes this a distinct and separate offense, having no connection with any other, and if the views above expressed are correct, it follows that De Vaucene was properly held in custody under such complaint, and that he was not impro-

1866. In addition, offenders are liable to have their "places" entered by sheriffs and police officers without process of any kind, simply upon their own action, their own discretion, and to summarily close and keep closed all such places for an indefinite term. In overruling the demurrers now interposed, one duty would alone remain to the court, which would be to sentence the defendants, under the law, for a misdemeanor, and to the penitentiary. In misdemeanors there is no *respondeat ouster* after demurrer (*People* agt. *Taylor*, 3 *Denio, p.* 9). On the other hand, if the demurrers are sustained for either of the various causes assigned by the counsel for the defendants, the decision of this court should be respected by the various magistrates and peace officers until reversed by a higher and appellate court. The question submitted is one of great importance both to the defendants, whose liberty is directly imperiled, and to the people, whose representatives framed the act. The indictments are founded upon alleged violations of the late excise act, and they must stand or fall upon the judicial decision to be rendered upon its legality or unconstitutionality. It was not indictable at common law to keep an inn or alehouse, unless disorderly conduct was commonly permitted therein (*Overseers* agt. *Warner*, 3 *Hill*, 150). Statutes for regulating the sale of intoxicating liquors have existed since the reign of Edward II., and commenting upon them, Bishop, in his treaties, takes occasion to write : "Whoever takes the trouble to read the old statutes of England on this subject learns, from rescitations of facts therein made, that the enforcement of this class of laws was always difficult." I have been unable to find in my researches that in Great Britain statutes regulating the liquor traffic, have ever contained any of the express or implied prohibitions against sales or the giving away of liquor, which have been incorporated in some of the states of the union, and even in Great Britain (where the church in harmony with the sovereign power might seem disposed to blend remedial laws with ethical notions), I am yet to learn, has gone to the extent of classifying the giving away of liquor as a crime. The act in question is so new and peculiar in its main feautures, that in giving my opinion upon the points involved and the conclusions to which I have arrived, I deem it necessary to quote some of its enactments. And, first, I would note a decided and remarkable innovation upon the license economy which has hitherto marked the legislative action of our state, which has authorized local authorities to select and appoint their own excise board. The new act makes an excise district created out of a metropolitan police district, but within the latter, and omitting therefrom Westchester county. By

perly detained and restrained of his liberty, and consequently that he is not entitled to a discharge. He must, therefore, be remanded, and all further proceedings in the court be discontinued.

*In re John H. Ketchum*—GILBERT, J. The return to the writ of *habeas corpus* shows that the petitioner is held under a warrant of arrest issued by the justice upon the sworn complaint of a policeman, that on the 7th of July instant, in the city of Brooklyn, in the county of Kings, the petitioner did unlawfully and publicly keep, sell and dispose of a quantity of strong and spirituous liquors—to wit: a glass of gin, at his place of business, No. 12 Fulton street, contrary to the

---

the terms of section 1, the sellers and givers away of liquor in the counties of Richmond and Queens, are supervised in their character and business by excise commissioners, who are not only appointed by centralized power at the seat of government, but one or more of whom are not even residents of one of the counties in which he or they exercise authority. The license fee of the dealers in liquor within the excise counties are not made applicable to the benefit of the fund belonging to those counties, but materially subserve to lighten the burdens of taxation of the neighboring counties of Kings and New York (§ 23). In the excise district the commissioners are charged with certain duties (§ 1). In the metropolitan police district an inspector of excise has jurisdiction (§ 2). As the boundaries of the several districts differ, it follows from the letter of these two sections that the subordinate inspector has powers of jurisdiction which his superiors have not been invested with. His duties are such as may, from time to time be delegated to him by the commissioners. The title of the act relates to the district in which the inspector acts. The bulk of the sections affect the lesser or smaller district. By the terms of the act, certain omissions and commissions are offenses at low water mark on the Westchester shore of the Harlem river, and cease to be criminal at high water mark. The act divides persons who sell or give away liquor into two classes; the one who sells or gives away to the extent of five gallons or in excess; the other in quantities less than five gallons (§ 7). The first class are not permitted to sell or give away unless "licensed" and "permitted" (§ 3). Both classes are prohibited from selling on credit (§ 17). The lawful sales are now fettered by this provision just as unlicensed (and therefore unlawful) sales of liquor have hitherto been. In acting upon applications for license the excise commissioners have delegated to them the legislative power of fixing a license fee, to range between thirty and two hundred and fifty dollars. The counsel for the people upon the argument stated that the board of excise had made two distinct licenses and two distinct amounts. The license is only to be given to those alone who may be approved by the board for good moral character. The act does not furnish any mode by which the conscience of the board may be satisfied that evidence as to the requisites of character are sufficient, although in former excise acts, certificates of character from residents and others within the ward or assembly district, have been regarded as sufficient. Upon the argument nothing was said as to the mode by which the board practically acquainted itself with the subject of character; but it is only fair to

provisions of the third and eighth sections of the act to regulate the sale of intoxicating liquors, &c., passed April 14, 1866. The discharge of the petitioner is demanded on the ground that the statute in question is unconstitutional and void.

1. It is said that the statute does not conform to section 16 of article 3 of the constitution, which requires the subject of a local bill to be expressed in the title. I think this objection has no basis in fact (*People* agt. *Liederman*, 36 *Barb.* 177). Besides, the article is not a local one within the meaning of the constitution.

2. The counsel for the petitioner admitted, as all must

presume that it would seek for legal testimony upon that subject rather than resort to the testimony of officers whose duty was simply to enforce the act. This license, when obtained, is to be hung up in the room or place where sales are made. It authorizes the holder to sell and dispose of—not sell or dispose of—the beverages named in the act and in the license only at such room or place. Both persons and premises are the subjects to be licensed. The license is also to be exhibited at all times to peace officers who demand its production. Not to do so, by the terms of the act, is to furnish evidence adverse to the legal status of such persons so declining or refusing. There is no mode provided for licensing the giving away or publicly keeping similar beverages, although to do so is made as much a misdemeanor when not licensed as to sell or dispose of when unlicensed (§ 31). Those licensed under this act are to prevent breaches of the peace in their places, and when their quietude is invaded are commanded, under penalty of being adjudged guilty of a misdemeanor, to forthwith remove all persons, the orderly as well as the disorderly—perhaps their assistants and themselves—from within doors, and close their places and keep them closed (§ 10). Licensed persons (except substantially those who keep hotels) are enjoined to keep their licensed places "completely and effectually closed on Sundays, and between midnight and sunrise in every twenty-four hours (§ 14). The license thus granted may be revoked, cancelled and annulled by the board "if it shall become satisfied that the licensed persons have violated any of the provisions of this act" (§ 22). The whole act bears marks of hasty consideration. There are many serious considerations which have arisen upon the -arguments which demand attention without entering into the decision. Counsel for the people urged that conflicts between the constitution and the statutes ought not to be lightly countenanced. Surely this should be so where a forced construction of the constitution is urged against the natural equity and letter of the statute. The counsel for the accused, however, claim that the very letter of the bill of rights of the federal constitution is opposed by this excise act. The learned district attorney urged that "courts at *nisi prius* are in practice both to hear or treat constitutional questions, forcing the litigant to moot them in *banco* and the higher tribunals." But the reason assigned fails here, because the people enjoy, by these demurrers, as full benefits upon findings of fact as if convictions had been had before petit juries. The questions are not upon motions to quash, from which no appeal lies. The interposition of demurrers are now rarely used, and would seem to show, on the present occasion, the confidence of the

admit, that the prohibition against selling strong or spirit-
uous liquors, in quantities less than five gallons at a time,
without a license, is valid, but he contended that the whole
statute rested on section three, which contains this prohibi-
tion, and that because that section contains other and dis-
tinct prohibitions, which the legislature had not the power to
impose, the whole statute is void.    I cannot assent to this
proposition.    It is unsound in logic as well as in law.    The
third section of the act in question provides that no person
shall publicly keep or sell, give away or dispose of, any
strong or spirituous liquors, &c., without a license, and
makes every violation of it a misdemeanor.    The petitioner

counsel for the defense in the position he has assumed. It was urged that there
was a variance between the title and the body of the act, but I do not consider
that technical question, as my decision is placed upon the broadest grounds of
substance. It was argued that the act was a local one, and that many subject
matters embraced therein went beyond the expressive title, "to regulate sale."
The "query" of the court of appeals in the case of *The People* agt. *Williams* (24
*N. Y. R. p.* 405), certainly goes far towards qualifying what the court had previ-
ously said in *The People* agt. *McCann* (16 *N. Y. R.* 58). But with the conclusions
hereafter undoubtingly arrived at, a conclusion upon the above point may be
waived under the conflict of decisions. Connected with this point of locality
another and vital question arises : How far can the legislature constitutionally
oblige a county of the state to contribute to the revenues of another without the
state at large, or the county so taxed, enjoying a correspondent concurrent bene-
fit? The residents, certainly, of the county towns of Kings and Queens, and per-
haps of Richmond county, by this act are forced to contribute not to the revenues
of the state, nor of their own respective counties. One of the most vital ques-
tions which has arisen upon the argument is, how far can the legislature
create crimes not general throughout the state, but geographical crimes; crimes
defined and limited within certain districts, and only affecting certain counties
within the state, and of a higher grade than mere police infractions? Can it
make an act a crime in one county, city or town, and not in another county, city
or town, adjacent, upon grounds not peculiar to the particular customs, usages or
chartered restrictions of such locality? If such be its constitutional power,
where is the limit to legislative caprice? Can it make the stealing of $26 grand
larceny in Kings county, $30 grand larceny in Erie county, and 6d. grand larceny
in Oneida county? Can it apportion manslaughter by degrees throughout the
different counties in the state? In the case of *The People* agt. *Williams*, above
referred to, the point was raised and argued upon a local statute making the
picking of pockets in New York a different crime from its legal definition in all
other parts of the state. The decision was given upon other points in favor of
the counsel for the accused ; but it may be remarked that at the succeeding ses-
sion of the legislature it destroyed the topographical character of the crime
adverted to, and made its legal definition and penalty general throughout the
state. No lawyer should doubt the inexpediency of the legislature enacting laws
of a criminal nature which should not in their operation be concurrent through-

is charged with selling a glass of gin without a license. The power of the legislature to create this offense, and to punish it in the mode prescribed, is unquestionable. It was indeed said, on the argument, that the right of disposition of liquor on hand at the time of the passage of the act was absolute, and that the legislature had no power to impair this right by requiring a license to be taken out as a condition of selling it in quantities less than five gallons. But this proposition was not proved, and it needs no argument to prove that it has no foundation in law. It being understood then, that the act with which the petitioner is charged is a legal offense and punishable as such; the precise question presented is

out the state. Is not the very essence of a criminal law its general application? Can the principle of territorially apportioning crime be sanctioned without ultimately allowing a legislature to enact criminal laws, applicable to some obnoxious person or persons, sect or sects? The authorities bearing upon this point are *Dwarris on Statutes* (*p.* 480); *Hatch* agt. *Vermont P. R. Co.* (2 *Vermont*, 48–61); *Benson* agt. *Mayor* (10 *Barb.* 245); *People* agt. *Draper* (15 *N. Y.* 544); *Calden* agt. *Ball* (3 *Dallas*, 386). It was argued that the act was unconstitutional, because excise commissioners are and always have been county or local officers, and that this act does not provide for the election or selection, but names them. It would seem that this point is not favored by the court of appeals in the fire department case. The counsel for the people, both the district attorney and the counsel for the excise commissioners, admitted upon the argumen that unless this act was regulatory, and was in any of its provisions prohibitory or confiscatory of property, or necessarily subjected the accused to deprivation of his liberty or property without due process of law, then it would be within the decision of the case of *The People* agt. *Wynehamer*, which decided the liquor law of 1855 to be unconstitutional. Let us then test this case by this concession and inquire: *First.* Is the act in question as presented to this court prohibitory? *Second.* Is it confiscatory? *Third.* Is it, when enforcing remedies, in conflict with the bill of rights? It will be conceded that implied prohibition, implied confiscation and implied conflict may become as effectual as express prohibition, express confiscation and express conflict. Such express conflict has been adjudicated upon in *Consa* agt. *Albro* (1 *Gray Mass. R. p.* 9), and *Toynbee* and *Wynehamer* cases. The act in question being highly penal in its character, involving upon conviction penal servitude, must be strictly construed. In the latest points submitted to me by the counsel for the excise board, it is said that penal statutes are not to be so construed as to defeat the manifest intention of the legislature; but that intent should be constitutionally conceived and expressed. One of the defendants stands indicted for giving away liquor without being licensed. Section 3, in connection with sections 16 and 19, undoubtedly make this act a misdemeanor, punishable by fine, imprisonment, penalty and arbitrarily closing up of any place within which such act should occur. It is somewhat remarkable that the statute omits to provide a license for giving away liquor; and the same may be said of the prohibition against keeping it publicly. The words "sale" and "disposing of," are convertible terms; but the phrases "giving away" and "publicly keeping," are not con-

whether the circumstances that the legislature incorporated in the same act other and distinct provisions which they had no power to enact, vitiate the whole statute. No authority for this proposition was cited except the case of *Wynehamer*, in 13 *N. Y. R.* On looking at that case I find that, so far as it contains any allusion to this subject, it is an authority for the reverse proposition. The rule contended for would be repugnant to reason and common sense, and I am satisfied no such rule has been or ought to be established. Mr. Sedgwick, in his treaties on statutory and constitutional law, says: "The principle that a statute is void only so far as its provisions are repugnant to the constitution, that all provi-

vertible or synonymous with "sale and disposition." Section 4 takes the seller out of the operation of the misdemeanor clauses by offering him the opportunity of a permit. No portion of the law exempts him who publicly keeps liquors or desires to give them away, from the operation of the misdemeanor clauses, of their stringent remedies and of their punishments. The law makes it a misdemeanor to give away or publicly keep liquor without a license. What is this but practical prohibition? It is true that save in the county of Westchester and in all other parts of the subdivided police district, any person not licensed may keep, sell and dispose of five gallons at a time of strong and spirituous liquors, wines, ale and beer; but what is the operation of this law upon any person who may have had in his possession at the time that the law went into effect, a lesser amount of the beverages mentioned? Does not the provisions of the law referred to practically destroy or confiscate such property? The law makes it a misdemeanor to give away or publicly keep liquor, &c., without a license, and omits to provide one. Thus the law does not in terms forfeit or expressly destroy the wine or beer of the citizen as the law of 1855 aimed to do, nor seize them by undue process of law, but by making it penal to simply keep them and give them away, this act as effectually in the end destroys its value and character of property and takes it away from its owner without compensation. If this excise act be valid, every person who gives his guest a glass of wine commits a misdemeanor, and so does every apothecary who keeps a jar of alcohol. The excise acts of other states are not obnoxious to this criticism, for they severally in their several excise acts have added words of intent, such as—with intent to sell, or with intent, under the guise of a gift, to effect a sale, as in the striped pig illustration cited by the counsel for the excise board. Even the odious law of 1855 expressly excepted a dwelling house as the scene of gift or keeping, which the act in question does not. Others are indicted for not " effectually and completely closing " their places. Where is the constitutional power to make such an enactment? A man's house has always been regarded as his " castle." So long as he does not commit crime in it or disorder, may he not keep it open as long as he pleases and at all hours? Concede that the legislature may regulate the hours of sale, yet wherein consists the crime of keeping one's premises open to public view, or private ingress or egress? Many storekeepers in every walk of life, live in rooms adjoining their shops. Some have no entrances to the abodes of their families except through their shops or stores, where poverty or the desire of thrift compels or induces

In the matter of Ketchum.

sions may thus be void, and this not affect other provisions of the statute, has been frequently declared" (*Sedgwick, Const. Law,* 489). "The principle is now well understood," says the supreme court of Massachusetts, "that when a statute has been passed, some part of which is not within the competency of the legislative power, such part thereof will be adjudged void, while all other parts of the act not obnoxious to the same objection will be held valid (*Fisher agt. McGee,* 1 *Gray,* 29). If it be admitted then, that the legislature has not the power to prohibit the publicly keeping or the giving away of liquors, or the selling to minors, &c., or to authorize the necessary enforcement of the law in

them to live. It is not enough to say the lawmakers did not intend such interpretation should be given to the act, and looking at it we find that it sternly provides that the places shall be completely and effectually closed, not for the purpose of preventing sales, but for all purposes, and, at the discretion and judgment of a police officer who has the right to effect the closing, to watch and maintain it. But the gravest constitutional objections attach to sections 19 and 20. Do they not on their face conflict with constitutional provisions? The bill of rights provides, article 5, "Nor shall any person be deprived of liberty without due process of law," nor shall private property be taken for public use without just compensation; * * * and by article 4: "The right of the people to be secure in their houses against unreasonable seizures shall not be violated." The excise act provides as follows, 19th and 20th sections:

Section 19. It shall be the duty of every sheriff, constable, policeman and officer of police to compel the observance and to prevent the violation of the foregoing provisions hereof; if necessary by summarily closing and keeping closed any places in which shall be violated any of such provisions.

Section 20. Every sheriff, constable, officer or member of police shall forthwith arrest all persons who shall violate any of the provisions of this act, and carry such persons before any magistrate of the city or town in which the offense shall be committed, to be dealt with according to the provisions of this act. And it shall be the duty of every magistrate to entertain complaints for a violation of any of the provisions of this act made by any person under oath.

Not only ministerial duties are here conferred upon peace officers, but judicial powers. They are to "compel the observance" of the law; when and how to compel, they judge. They decide upon the necessity. They act, by summarily closing. Summarily is a word excluding the ordinary processes. They are to keep the places closed. For how long? To keep the places closed "in which shall be violated any of such provisions," *i. e.* "the foregoing provisions hereof," that is to say those mandatory provisions of the act. In one place a man may have sold liquor to an apprentice or a child under only technical guilt. He is not only punished by imprisonment therefor, but the place is tainted by his crime, it seems, and is to be kept closed thereafter. The highest crime known to law is murder. Will some future legislature shut up the place for all time in which the murderer committed his crime, as a high cabinet officer closed the building in which an ever to be deplored assassination was committed? Crime is a personal

the manner and by the means provided, it does not follow that it transcended its powers by making the sale of gin by the glass, without license, an offense punishable according to the ordinary forms of law. The question or the validity of the other provisions of the statute to which allusions have been made is not before me. While I have decided convictions respecting them, I do not for this reason think it proper to express them.

The petitioner must be remanded.